### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
CASE NO.

LOUIS VUITTON MALLETIER,

   Plaintiff,

vs.

LVHUT.NET, LOUIS-SPECIAL-SALE.SHOP, GOSLOUISVUITTON.COM, LOUISVED.XYZ, LOUISVUED.COM, LOUISVUITTON-MY.SITE, LOVELVBAG.STORE, LVICON.ONLINE, LV-MALAYSIA.STORE, LVOUTLET.CA, LVREPLICASHOP.COM, LV-THEGARDENS.COM, MALAYSIA-LV.COM, MALAYSIA-LVBAG.STORE, MY-LVBAG.INFO, PERFECTLOUISVUITTONSALE.COM, REPLICALVONLINE.COM, THEGARDENS-LV-KL.COM, TOPLVMALL.COM, AAALUXURYBAGS.COM, 66SHOP.RU, AAACLOTHING.RU, AAAPURSE.NU, AAAREPLICA.CO, AARAPLICA.COM, ABCBYIKTUYS.PW, ACMAASLEA.TOP, ADDNSS.COM, AIMJI.LIVE, ANNJXAUO.TOP, ASSOCIATEADAPT.TOP, BAGSREPLICA.DE, BAOFSE.TOP, BDKIND.STORE, BDZNEDNZ.TOP, BESTBAG.SHOP, BESTQUALITYREPLICA.RU, BTSMUD.TOP, BUYEBAG.TOP, BVCNTA.TOP, BXSYEAO.TOP, CBHJSKV.TOP, CDFTBAG.TOP, CHINAREPLICBAGAS.COM a/k/a DOLABUY.RU a/k/a REPLICACLOIBAG.COM a/k/a THEBAGSREPLICAS.COM, CMSBEB.TOP, CNAVEUA.TOP, CNVJGRKS.TOP, COPYBAGSSALE.COM, COPYFORBAGS.COM, CORABAGS.RU, CSFFBG.TOP, DAPHNESALE.RU, DEMAKOAF.TOP, DFSDFGRG.SHOP, DROPTHENEW.COM, DVRCBHT.TOP, E8BAGS.CO, EHDGFSH.TOP, EYUSHI.TOP, EZZCC.COM, FABAG.RU, FAKESCU.COM, FAMOUSIDE.COM, FASHIONBAGS-SALE.COM, FASHIONHOUSE.BUZZ, FASIONOTO.RU, FAUXBAGSALE.COM, FCDSHSU.TOP a/k/a MNCHWA.TOP, FXTAYHK.TOP, GDHNAWO.TOP, HANDBAGSREPLICASTORE.COM, HBNDGYW.TOP, HELLOSNEAKER.RU, KINDSNEAKER.NET, KOPI-6.COM, KROSSHOP24.RU, LIANWHOLESALE.COM, LILYSALE.RU a/k/a LILYSITE.RU, LUXCRIME.RU a/k/a LUX-CRIME.RU, LUXEBAGSEU.COM, LUXESBORSE.COM, LUXRUY.COM, LUXURY2018.COM, LUXURYBAGAA.COM, LUXURYBAGOUTLET.COM, LUXURYMYBAG.COM, LUXURYSHOESU.DE, LUXURYSUU.COM, LUXURYTASTICREPS.RU, LUXUSDIVA.COM, MANDYBRANDS-03.COM, MCDEUE.TOP, MCHAUI.TOP,

MCKSWH.TOP, MDJITCX.TOP, METHODC.COM,
MFJERNC.TOP, MFVJRSEW.TOP, MGIFKDLS.TOP,
MGSAYWA.TOP, MHSEBAG.TOP, MHYCBAG.TOP,
MNXHUA.TOP, MNXWOK.TOP, MODECINA.CN a/k/a
MODECINA.RU, MXNBZW.TOP, MXSAJKW.TOP,
MZBHWU.TOP, NBVRTYF.TOP, NCAXZJBN.TOP,
NCEUBAG.TOP, NCMFJRS.TOP, NCRSFSD.TOP,
NCYESIZS.TOP, NDSYVE.TOP, NEVERFULLOUTLET.COM,
NEWBUYBUYSTATIONS.COM, NGFSFSFD.TOP, NMJHAC.TOP,
NVXDEDX.TOP, NYSETI.TOP, ORIGINALHANDBAG.TOP,
OUTLETBORSA.NET, PERFECTFAKEBAGS.COM,
PKAJSTORE.COM, PKSHOE.COM a/k/a PKSHOE.NET,
POPBRANDCENTER.COM, PURSEVALLEYFACTORY.LA,
QDFDNY.TOP, QDNCZ.TOP, QUALITYBESTBAGS.COM,
REALFASHION24.COM, REPLICA-WATCHES-GERMANY.COM,
REPLICAWATCHESPRO.CO, REPLICAXI.COM,
RESINSTATUE.CLUB, SDEHBAG.TOP, SFFP.SHOP,
SNEAKERINBOX.COM, TAIKCMJ.TOP,
TANGERJAPANOUTLET.COM, THCODWAY.COM,
THEYBAG.TOP, TIKHUB.RU, TOPLIFESHOP.COM,
TOWBAG.SHOP, UDIFSKB.TOP, UENMBAG.TOP,
UHDSAHWO.TOP, UJHYFSDT.TOP, VIPSLUXURYBAGS.COM,
VLIXCOLUX.COM, VMNXJEWS.TOP, WDVBF.TOP,
WFVNBAG.TOP, XCFWNM.TOP, XNDJOSEN.TOP,
XNHYAO.TOP, XNWYID.TOP, YANGYUEJIANQIALI.COM,
YFKEW.COM, YREPLICABAGS.COM, YTGFDLCM.TOP,
and YTRFEGH.TOP, each an Individual, Partnership, or
Unincorporated Association,

        Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Louis Vuitton Malletier ("Louis Vuitton") hereby sues Defendants, the

Individuals, Partnerships, or Unincorporated Associations identified in the caption, which are set

forth on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, selling,

offering for sale and/or distributing goods within this district using counterfeits and confusingly

similar imitations of Louis Vuitton's trademarks through at least the commercial Internet

websites operating under the domain names set forth on Schedule "A" hereto (the "Subject

Domain Names"). In support of its claims, Louis Vuitton alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for federal trademark counterfeiting and infringement, false

designation of origin, cybersquatting, common law unfair competition, and common law

trademark infringement, pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a) and 1125(d), and The All

Writs Act, 28 U.S.C §1651(a), and Florida's common law. Accordingly, this Court has subject

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and

1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Louis

Vuitton's state law claims because those claims are so related to the federal claims that they form

part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they operate

commercial websites accessible in this district, conduct business by registering and maintaining

the Subject Domain Names within the United States, and direct business activities towards

consumers throughout the United States, including within the State of Florida and this district

through, at least, the fully interaction commercial Internet websites operating under the Subject

Domain Names.[1] Alternatively, Defendants are subject to personal jurisdiction in this district

---

[1] Some Defendants use their Subject Domain Names act as supporting domain names to direct
traffic to their fully interactive commercial websites operating under other Subject Domain
Names, from which consumers can complete purchases. Some of the supporting domain names,
when accessed directly, appear to be blog style or non-operating websites; however, when visited
from a search engine such as Google, visitors are redirected to the fully interactive websites
operating under other Subject Domain Names. Other supporting domain names either
automatically redirect and forward to a fully interactive, commercial Internet website operating
under one of the Subject Domain Names or redirect a fully interactive, consumer to a
commercial Internet website operating under one of the Subject Domain Names upon clicking a
product or link on the website. Accordingly, the web pages for the Subject Domain Names which
operate as redirecting websites are included with the web pages to which those sites redirect, as
shown in Composite Exhibit "2" attached hereto.

Some Subject Domain Names do not offer the shopping cart feature; rather, consumers are able
to browse the listings of Louis Vuitton branded products online via the websites, ultimately
allowing customers to inquire and make direct purchases of the Louis Vuitton branded products

pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this district by advertising, offering to sell and/or selling infringing products into this district.

## THE PLAINTIFF

4.      Louis Vuitton is a société par actions simplifiée organized under the laws of the Republic of France with its principal place of business located at 2, rue du Pont-Neuf in Paris, France 75034. Louis Vuitton operates boutiques throughout the world, including within this district. Louis Vuitton is, in part, engaged in the business of manufacturing, marketing, and distributing throughout the world, including within this district, a variety of high-quality luxury goods under multiple world-famous common law and federally registered trademarks, including those identified in Paragraph 17. Louis Vuitton offers for sale and sells its goods within the State of Florida, including this district, through its boutiques, and online retail website. Defendants, through the advertising, offering for sale, and sale of counterfeit and infringing Louis Vuitton branded products, are directly, and unfairly, competing with Louis Vuitton's economic interests in the State of Florida and causing Louis Vuitton harm within this jurisdiction.

5.      Like many other famous trademark owners, Louis Vuitton suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Louis Vuitton's trademarks for

---

via electronic communication, including e-mail and/or private messaging services such as WhatsApp and WeChat, or via phone.

the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits.

6.      To combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Louis Vuitton expends significant monetary and other resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars.  The exponential growth of counterfeiting over the Internet has created an environment that requires Louis Vuitton to file a number of lawsuits, often it later turns out, against the same individuals and groups, in order to protect both consumers and itself from the adverse effects of confusion and erosion of the goodwill embodied in the Louis Vuitton brand.

## THE DEFENDANTS

7.      Defendants operate through domain names registered with registrars in multiple countries, including the United States, and are comprised of individuals, partnerships, and/or business entities of unknown makeup, whom, upon information and belief, likely reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants direct their business activities towards consumers throughout the world, including the United States and within this district through the simultaneous operation of at least the commercial websites existing under the Subject Domain Names.

8.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by the same Defendant Number on Schedule "A" hereto.

9.      Defendants are directly and personally contributing to, inducing and engaging in the sale of counterfeit branded products as alleged herein, often as partners, co-conspirators and/or suppliers.

10.      Defendants are part of an ongoing scheme to create and maintain an illegal marketplace enterprise on the World Wide Web, which (i) confuses consumers regarding the source of Defendants' goods for profit, and (ii) expands the marketplace for illegal, counterfeit Louis Vuitton branded goods while shrinking the legitimate marketplace for genuine Louis Vuitton goods.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Louis Vuitton's famous name and associated trademarks, as well as the destruction of the legitimate market sector in which Louis Vuitton operates.

11.      Defendants are the past and/or present controlling forces behind the operation of the websites operating under at least the Subject Domain Names.

12.      Defendants directly engage in unfair competition with Louis Vuitton by (i) advertising, offering for sale and/or selling goods bearing counterfeits and infringements of one or more of Louis Vuitton's trademarks to consumers within the United States and this district through at least the commercial websites and supporting Subject Domain Names as well as any additional domains and websites, and corresponding website URLs not yet known to Louis Vuitton and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from Louis Vuitton's legitimate marketplace for its genuine goods. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, and/or sale of counterfeit Louis Vuitton branded goods into the State and by operating an illegal marketplace enterprise which

impacts and interferes with legitimate commerce throughout the United States, including within the State of Florida.

13.    Defendants have registered or purchased and maintained the Subject Domain Names, and the websites operating thereunder. Upon information and belief, many Defendants have engaged in fraudulent conduct with respect to the registration of the Subject Domain Names by providing false and/or misleading information to their various registrars during the registration or maintenance process. Upon information and belief, Defendants have registered and/or maintained their Subject Domain Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

14.    Defendants will likely continue to register or acquire new domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations of Louis Vuitton's trademarks unless preliminarily and permanently enjoined. Moreover, Defendants will likely continue to maintain and grow their illegal marketplace enterprise at Louis Vuitton's expense unless preliminarily and permanently enjoined.

15.    Defendants' entire Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Louis Vuitton and others.

16.    Defendants' business names, i.e., the Subject Domain Names, and any other domain names, and aliases used in connection with the sale of counterfeits under Louis Vuitton's trademarks, are essential components of Defendants' unlawful activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Louis Vuitton. Moreover, Defendants are using Louis Vuitton's famous name and trademarks to drive Internet consumer traffic to their websites operating under the Subject

Domain Names, thereby creating and increasing the value of the Subject Domain Names and decreasing the size and value of Louis Vuitton's legitimate consumer marketplace at Louis Vuitton's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

17.    Louis Vuitton is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Louis Vuitton Marks").

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 0,297,594 | September 20, 1932 | IC 18. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks. |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 | IC 18. Luggage and ladies' handbags. |
|  | 1,519,828 | January 10, 1989 | IC 18. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, pocketbooks. |
|  | 1,770,131 | May 11, 1993 | IC 25. Clothing for men and women, namely, shawls, sashes, scarves; headgear. |
|  | 1,794,905 | September 28, 1993 | IC 16. Stationery, pads of stationery, calendars, indexes for articles made for travellers, notebooks, envelopes; writing paper, office requisites in the nature of writing pads, pencil holders, pen cases, pencil cases, nibs, nibs of gold, inkwells, inkstands.<br>IC 25. Clothing for men and women; namely belts, shawls, sashes, scarves; footwear headgear. |
|  | 1,938,808 | November 28, 1995 | IC 14. Jewelry, watches and straps for wrist watches.<br>IC 24. Travel blankets made of textile. |

8

| | | | |
|---|---|---|---|
| LOUIS VUITTON | 1,990,760 | August 6, 1996 | IC 14. Watches and straps for wrist watches.<br>IC 16. Catalogues featuring luggage and travel accessories, bags, small leather goods, and garments; notebooks, anthologies, and pamphlets referring to travel; calendars; telephone indexes; fountain pens, ballpoint pens, nibs, covers for pocket and desk diaries, and checkbook holders.<br>IC 18. Trunks; traveling trunks; suitcases; traveling bags; luggage; garment bags for travel; hat boxes for travel; shoe bags for travel; umbrellas; animal carriers; rucksacks; haversacks; leather or textile shopping bags; beach bags; handbags; vanity cases sold empty; attaché cases; tote bags, travel satchels; clutch bags; briefcases; wallets; pocket wallets; credit card cases; business card cases; bill and card holders; checkbook holders; key cases; change purses; briefcase-type portfolios.<br>IC 24. Travel blankets<br>IC 25. Shirts; sweatshirts; polo shirts; T-shirts; headwear; jackets; ties; belts; shawls; scarves. |
|  | 2,177,828 | August 4, 1998 | IC 14. Goods made of precious metals, namely, shoe ornaments, ornamental pins; jewelry, namely, rings, ear rings, cufflinks, bracelets, charms, necklaces; horological instruments, straps for watches, watches and wrist-watches, and cases for watches.<br>IC 18. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty; rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas.<br>IC 25. Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |

| | | | |
|---|---|---|---|
|  | 2,181,753 | August 18, 1998 | IC 14. Jewelry, namely, rings, ear rings, bracelets, charms, necklaces, horological instruments, straps for watches, watches, and wrist-watches, and cases for watches.<br>IC 18. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas.<br>IC 25. Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |
|  | 2,361,695 | June 27, 2000 | IC 25. Clothing, namely, sweaters, shirts, sweatshirts, polo shirts, t-shirts, suits, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, pocket handkerchief squares for wear, gloves, ties, belts, bathing suits, shoes, boots and sandals, and hats. |
| <br>LOUIS VUITTON PARIS | 2,378,388 | August 22, 2000 | IC 18. Goods made of leather or imitations of leather not included in other classes, namely, boxes of leather principally used for travel purposes, trunks, valises, traveling bags, * traveling sets for containing cosmetics and jewelry, * handbags, beach bags, shopping bags, shoulder bags, brief cases, pouches, fine leather goods namely, pocket wallets, purses, key cases, business card cases, credit card cases. |
|  | 2,399,161 | October 31, 2000 | IC 25. Cothing and underwear, namely, shirts, polo shirts, t-shirts, waistcoats, raincoats, skirts, coats, trousers, dresses, jackets, shawls, stoles, scarves, neckties, gloves, ties, belts, bathing suits, shoes, boots and sandals, hats. |

| | | | |
|---|---|---|---|
|  | 2,773,107 | October 14, 2003 | IC 14. Jewelry including rings, earrings, cuff links, bracelets, charms, necklaces, and medallions; horological and chronometric instruments and apparatus, namely, watches, <br> IC 18. Travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attaché cases, briefcases, drawstring pouches, pocket wallets, purses, umbrellas, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather; key holders made of leather or of imitation leather. <br> IC 25. Clothing, namely, shirts, T-shirts, belts, scarves, neck ties, shawls, skirts, raincoats, overcoats, trousers, jeans, pullovers, frocks, highheeled shoes, low-heeled shoes, boots, tennis shoes; hats |
| LOUIS VUITTON | 2,904,197 | November 23, 2004 | IC 14: jewelry, namely, rings, earrings, cuff links, bracelets, charms, necklaces, (( tie pins, and medallions; keyrings made of precious metal; )) horological and chronometric instruments, namely, watches, wrist-watches, (( clocks, )) (( alarm clocks; )) straps for wrist-watches and watch cases. |
| LOUIS VUITTON | 2,909,003 | December 7, 2004 | IC 009. Optical instruments and apparatus, namely, spectacles, eyeglasses, spectacle cases. <br> IC 024. Textiles and textile goods, namely, household linen including bed [ and bath ] linen [, handkerchiefs of textile ]. |
|  | 3,107,072 | June 20, 2006 | IC 09. Spectacles, sunglasses and spectacle cases. <br> IC 14. Jewelry, namely, rings, earrings and ear clips, cuff links, bracelets, charms, necklaces, tie pins, medallions; horological and chronometric apparatus and instruments, namely, watches, watch cases, alarm clocks; jewelry boxes of precious metal, their alloys or coated therewith. <br> IC 18. Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, key cases, business card cases, credit card cases; umbrellas. <br> IC 25. Clothing and undergarments, namely, shirts, tee-shirts, belts, scarves, neckties, shawls, skirts, raincoats, overcoats, trousers, denim trousers, dresses, jackets, sashes for wear, bathing suits, shoes, boots. |

| | | | |
|---|---|---|---|
|  | 3,576,404 | February 17, 2009 | IC 18: boxes of leather or imitation leather for packaging and carrying goods, trunks, suitcases, traveling sets comprised of matching luggage, traveling bags, luggage, garment bags for travel, ((vanity cases not fitted, )) toiletry cases sold empty, rucksacks, satchels, handbags, beach bags, leather shopping bags, sling bags, suit carriers, shoulder bags, waist bags, purses, travel cases, briefcases, briefcase-type portfolios, leather pouches, wallets, change purses, key cases, business card cases, calling card cases. |
|  | 4,192,541 | August 21, 2012 | IC 03. Soaps for personal use; perfumery; essential oils; cosmetics; creams for the hair, face, and body; lotions for the hair, face, and body; shower and bath gels; shower and bath preparations; shampoos; make-up preparations, namely, foundations, lipsticks, eye shadows, mascara, make-up powder, and nail polish. IC 09. Sunglasses; spectacles; optical lenses; spectacle cases; telephones; mobile telephones; smart phones; PC tablets; personal digital assistants; MP3 players; accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, hands-free kits for telephones, batteries, covers, housings, façades, chargers, hand straps, and neck straps. IC 14. Jewelry; key rings of precious metal; tie pins; medallions; jewelry boxes; watches; watch bands; alarm clocks; cases for timepieces. IC 16. Printed matter, namely, pamphlets, catalogs, and books in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; publications, namely, brochures and booklets in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; stationery; stationery articles, namely, note pads, writing books, drawing books, calendars, agendas, notebooks, envelopes, letter paper, and index cards; covers for diaries, indexes, and pads; office requisites, namely, letter trays, paper cutters, pencils, inkstands, inkwells, paperweights, pencil holders, pen holders, writing pads, pens, balls, and nibs for pens; postcards; paper labels; newspapers; printed documents, namely, printed certificates. IC 18. Boxes of leather or imitation leather for packaging and carrying goods; traveling bags; leather traveling sets of luggage; trunks; suitcases; garment bags for travel; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather |

| | | | |
|---|---|---|---|
| | | | document cases; wallets; purses; leather key cases; umbrellas.<br>IC 24. Textiles and textile goods, namely, bath linen, bed linen, table linen, towels, bed covers, textile table cloths.<br>IC 25. Clothing, namely, underwear, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear; headwear.<br>IC 34. Cigar and cigarette cases of leather and imitation leather. |
| LOUIS VUITTON | 4,530,921 | May 13, 2014 | IC 09. Optical apparatus, namely, binoculars; blank USB sticks; spectacles; sunglasses; spectacle frames; spectacle glasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 Players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories.<br>IC 16. Paper bags; boxes of cardboard or paper; cardboard and paperboard envelopes and pouches for packaging; plastic materials for packaging, namely, bags; posters; pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; paper labels; trading cards; greeting cards; business cards; invitation cards; printed publications, namely, books, newspapers, leaflets, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; bookbinding materials; printed photographs; photograph albums; stationery, namely, note pads, desk pads, writing pads, drawing pads, envelopes, note paper; calendars; pocket calendars; note books; telephone indexes; diary covers; diaries; office requisites, namely, letter trays, paper knives, ink stands, inkwells, paper weights, pencil holders, pen holders, pencil tubs, blotting pads, pencils, fountain pens, rubber erasers, pen cases; printing types; printing blocks; table linens of paper.<br>IC 25. Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, waterproof pants, overcoats, parkas, skirts, dresses, pajamas, dressing gowns, nightgowns, robe, gloves, neck ties, belts for clothing, leather belts, scarves, pocket squares, sashes for wear, shawls, stockings, socks, tights, braces for clothing, suspenders, stoles, underwear, lingerie, bathing suits; headwear; shoes; slippers; boots; half-boots. |

| | | | |
|---|---|---|---|
| | | | IC 26. Buttons; hooks and eyes; shoe buckles; hair accessories, namely, hair pins, barrettes, hair bows, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |
| $\mathcal{LV}$ | 4,614,736 | September 30, 2014 | IC 09. Optical apparatus, namely, binoculars; blank USB sticks; spectacles; sunglasses; spectacle frames; spectacle glasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories. IC 16. Paper bags, boxes of cardboard or paper, cardboard and paperboard envelopes and pouches for packaging; plastic materials for packaging, namely, bags; posters; pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; paper labels; trading cards; greeting cards; business cards; invitation cards; printed publications, namely, books, newspapers, leaflets, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; bookbinding materials; printed photographs; photograph albums; stationery, namely, note pads, desk pads, writing pads, drawing pads, envelopes, note paper; calendars; pocket calendars; note books; telephone indexes; diary covers; diaries; office requisites, namely, letter trays, paper knives, ink stands, inkwells, paper weights, pencil holders, pen holders, pencil tubs, blotting pads, pencils, fountain pens, rubber erasers, pen cases; printing types; printing blocks; table linens of paper. IC 26. Buttons; hooks and eyes; shoe buckles; hair accessories, namely, hair pins, barrettes, hair bows, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |

The Louis Vuitton Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above.  True and correct copies of the Certificates of Registration for the Louis Vuitton Marks are attached hereto as Composite Exhibit "1."

18.     Long before the Defendants began their infringing activities complained of herein, the Louis Vuitton Marks have been used by Louis Vuitton in interstate commerce to identify and distinguish Louis Vuitton's high-quality goods.

19.     The Louis Vuitton Marks have never been assigned or licensed to any of the Defendants in this matter.

20.     The Louis Vuitton Marks are symbols of Louis Vuitton's quality, reputation and goodwill. Louis Vuitton has continuously used the Louis Vuitton Marks since registration.

21.     Further, Louis Vuitton expends substantial resources developing, advertising and otherwise promoting the Louis Vuitton Marks.  The Louis Vuitton Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

22.     Louis Vuitton extensively uses, advertises, and promotes the Louis Vuitton Marks in the United States in association with the sale of high-quality goods and has carefully monitored and policed the use of the Louis Vuitton Marks.

23.     As a result of Louis Vuitton's efforts, members of the consuming public readily identify merchandise bearing or sold under the Louis Vuitton Marks as being high-quality goods sponsored and approved by Louis Vuitton.

24.     Accordingly, the Louis Vuitton Marks have achieved secondary meaning as identifiers of high-quality goods.

25.     Genuine goods bearing the Louis Vuitton Marks are widely legitimately advertised, promoted, and sold by Louis Vuitton and its authorized distributors. Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo! and Bing has become increasingly important to Louis Vuitton's overall marketing and consumer education efforts. Thus, Louis Vuitton expends significant monetary

resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow Louis Vuitton and its authorized retailers to educate consumers fairly legitimately about the value associated with the Louis Vuitton brand and the goods sold thereunder.

**Defendants' Infringing Activities**

26.     Defendants are promoting, advertising, distributing, selling and/or offering for sale goods in interstate commerce using counterfeits and confusingly similar imitations of the Louis Vuitton Marks (the "Counterfeit Goods") through the commercial websites operating under the Subject Domain Names. True and correct copies of the web pages reflecting samples of the Internet websites operating under the Subject Domain Names displaying Louis Vuitton's branded items offered for sale are attached hereto as Composite Exhibit "2." Specifically, Defendants are using the Louis Vuitton Marks to initially attract online consumers and drive them to Defendants' ecommerce stores operating under the Subject Domain Names. Defendants are using identical copies of one or more of the Louis Vuitton Marks for different quality goods. Louis Vuitton has used the Louis Vuitton Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Louis Vuitton's merchandise.

27.     Defendants' Counterfeit Goods are of a quality substantially different than that of Louis Vuitton's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality products offered for sale by Louis Vuitton despite Defendants' knowledge that they are without authority to use the Louis Vuitton Marks. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who

will believe all of Defendants' goods are genuine goods originating from, associated with, and/or approved by Louis Vuitton.

28.    Defendants advertise their ecommerce stores, including their Counterfeit Goods, to the consuming public via at least their websites operating under the Subject Domain Names. In so advertising their stores and products, Defendants improperly and unlawfully use one or more of the Louis Vuitton Marks without authority.

29.    As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, concurrently employing and benefiting from substantially similar, and often times coordinated, advertising and SEO strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of the Louis Vuitton Marks. Specifically, Defendants are using counterfeits and infringements of Louis Vuitton's famous name and the Louis Vuitton Marks to make their websites selling illegal goods appear more relevant and attractive to consumers searching for both Louis Vuitton and non-Louis Vuitton goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Louis Vuitton's genuine goods. Defendants are causing, individual, concurrent and indivisible harm to Louis Vuitton and the consuming public by (i) depriving Louis Vuitton of its right to fairly compete for space online and within search engine results and reducing the visibility of Louis Vuitton's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Louis Vuitton Marks, (iii) increasing Louis Vuitton's overall cost to market its goods and educate consumers about its brand via the Internet, and/or (iv) maintaining an illegal marketplace enterprise which perpetuates the ability of

Defendants and future entrants to that marketplace to confuse consumers and harm Louis Vuitton with impunity.

30.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm, within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Louis Vuitton and the consuming public for Defendants' own benefit.

31.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Louis Vuitton's ownership of the Louis Vuitton Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

32.     Defendants' use of the Louis Vuitton Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Louis Vuitton's consent or authorization.

33.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Louis Vuitton's rights for the purpose of trading on Louis Vuitton's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Louis Vuitton and the consuming public will continue to be harmed.

34.     Defendants' above-identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive

customers into believing there is a connection or association between Louis Vuitton's genuine goods and Defendants' Counterfeit Goods, which there is not.

35.     Additionally, Defendants 1–19 have registered their respective Subject Domain Name(s), using marks that are nearly identical and/or confusingly similar to at least one of the Louis Vuitton Marks (the "Cybersquatted Subject Domain Names").

36.     Defendants 1–19 do not have, nor have they ever had, the right or authority to use the Louis Vuitton Marks for any purpose.  Further, the Louis Vuitton Marks have never been assigned or licensed to be used on any of the websites, including the websites operating under the Cybersquatted Subject Domain Names.

37.     Defendants 1–19 have provided false and/or misleading contact information when applying for the registration of the Cybersquatted Subject Domain Names, or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

38.     Defendants 1–19 have never used any of the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

39.     Defendants 1–19 have not made any bona fide non-commercial or fair use of the Louis Vuitton Marks on a website accessible under any of the Cybersquatted Subject Domain Names.

40.     Defendants 1–19 have intentionally incorporated at least one of the Louis Vuitton Marks in their Cybersquatted Subject Domain Names to divert consumers looking for Louis Vuitton's genuine website to their own website for commercial gain.

41.     Given the visibility of Defendants' various websites and the similarity of their actions, including their advertising, marketing and SEO activities, it is clear Defendants are

either related or, at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Louis Vuitton and the overall consumer market in which it operates as a result of Defendants' concurrent actions.

42.    Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Louis Vuitton.

43.    Louis Vuitton has no adequate remedy at law.

44.    Louis Vuitton is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Louis Vuitton Marks.

45.    The harm and damage sustained by Louis Vuitton have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods and by the creation, maintenance and very existence of Defendants' illegal marketplace enterprise.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

46.    Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

47.    This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies, and/or colorable imitations of the Louis Vuitton Marks in commerce in connection with the promotion, advertisement, distribution, sale and/or offering for sale of the Counterfeit Goods.

48.    Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing products bearing and/or using counterfeit and infringements of one or more of the Louis Vuitton Marks. Defendants are continuously infringing and inducing

others to infringe the Louis Vuitton Marks by using them to advertise, promote, sell, and/or offer counterfeit and infringing Louis Vuitton branded goods.

49.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

50.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Louis Vuitton and are unjustly enriching Defendants at Louis Vuitton's expense.

51.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Louis Vuitton Marks in violation of Louis Vuitton's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

52.     Louis Vuitton has no adequate remedy at law. Louis Vuitton has suffered and will continue to suffer irreparable injury due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

53.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

54.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Louis Vuitton Marks have been widely advertised and offered for sale throughout the United States.

55.     Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of one or more of the Louis Vuitton Marks are virtually identical in appearance to Louis Vuitton's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly,

Defendants' activities are likely to cause confusion among the consuming public as to at least the origin or sponsorship of their Counterfeit Goods.

56.     Defendants have used in connection with their advertisement, offer for sale, and sale of the Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Louis Vuitton's detriment

57.     Defendants have authorized infringing uses of one or more of the Louis Vuitton Marks, in Defendants' advertisement and promotion of their counterfeit and infringing branded products. Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

58.     Additionally, many Defendants are using counterfeits and infringements of one or more of the Louis Vuitton Marks in order to unfairly compete with Louis Vuitton and others for space within organic search engine and social media results. The Defendants are thereby jointly (i) depriving Louis Vuitton of valuable marketing and educational space online which would otherwise be available to Louis Vuitton, and (ii) reducing the visibility of Louis Vuitton's genuine goods on the World Wide Web including across social media platforms.

59.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

60.     Louis Vuitton has no adequate remedy at law. Louis Vuitton has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities

if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT III - CLAIM FOR RELIEF FOR CYBERSQUATTING PURSUANT TO §43(d) OF THE LANHAM ACT (15 U.S.C. §1125(d))
### (Against Defendants 1–19 only)

61.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

62.     At all times relevant hereto, Louis Vuitton has been and still is the owner of all rights, title and interest in and to the Louis Vuitton Marks

63.     Defendants 1–19 have acted with the bad faith intent to profit from the Louis Vuitton Marks and the goodwill associated with therewith by the registration and maintenance of the Cybersquatted Subject Domain Names.

64.     The Louis Vuitton Marks were distinctive and famous at the time Defendants 1–19 registered the Cybersquatted Subject Domain Names.

65.     Defendants 1–19 have no rights in or to the Louis Vuitton Marks.

66.     The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of at least one of the Louis Vuitton Marks.

67.     Defendants 1–19's registration and maintenance of the Cybersquatted Subject Domain Names was done with knowledge and constitutes a willful violation of Louis Vuitton's rights in the Louis Vuitton Marks. At a minimum, Defendants 1–19's conduct constitutes reckless disregard for and willful blindness to Louis Vuitton's rights.

68.     Louis Vuitton has no adequate remedy at law.

69.     Defendants 1–19's actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

70.     Louis Vuitton has no adequate remedy at law. Louis Vuitton has suffered and will continue to suffer irreparable injury and damages due to Defendants 1–19's above-described activities if these Defendants are not preliminarily and permanently enjoined. Additionally, Defendants 1–19 will continue to wrongfully profit from their illegal activities.

### COUNT IV - COMMON LAW UNFAIR COMPETITION

71.     Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

72.     This is an action against Defendants based on their (i) promotion, advertisement, distribution, sale and/or offering for sale of goods using or bearing marks which are virtually identical to the Louis Vuitton Marks, and (ii) creation and maintenance of an illegal, ongoing marketplace enterprise operating in parallel to the legitimate marketplace in which Louis Vuitton sells its genuine goods, in violation of Florida's common law of unfair competition.

73.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and/or distributing infringing and counterfeit Louis Vuitton branded goods. Defendants are also using counterfeits and infringements of one or more of the Louis Vuitton Marks to unfairly compete with Louis Vuitton and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

74.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the consuming public as to the origin and quality of Defendants' ecommerce stores as a whole and all products sold therein.

75.     Louis Vuitton has no adequate remedy at law. Louis Vuitton has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities

if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## COUNT V - COMMON LAW TRADEMARK INFRINGEMENT

76. Louis Vuitton hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 45 above.

77. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of the Louis Vuitton Marks. Louis Vuitton is the owner of all common law rights in and to the Louis Vuitton Marks.

78. Specifically, Defendants are promoting and otherwise advertising, distributing, offering for sale, and selling goods using or bearing infringements of one or more of the Louis Vuitton Marks.

79. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Louis Vuitton Marks.

80. Louis Vuitton has no adequate remedy at law. Louis Vuitton has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

## **PRAYER FOR RELIEF**

81.     WHEREFORE, Louis Vuitton demands judgment on all Counts of this Complaint

and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of a temporary restraining order, as well as preliminary and

permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65,

enjoining Defendants, their agents, representatives, servants, employees, and all those acting in

concert or participation therewith, from manufacturing or causing to be manufactured, importing,

advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from

infringing, counterfeiting, or diluting the Louis Vuitton Marks; from using the Louis Vuitton

Marks, or any mark or trade dress similar thereto, in connection with the sale of any

unauthorized goods; from using any logo, trade name, trademark or trade dress that may be

calculated to falsely advertise the services or products of Defendants as being sponsored by,

authorized by, endorsed by, or in any way associated with Louis Vuitton; from falsely

representing themselves as being connected with Louis Vuitton, through sponsorship or

association, or engaging in any act that is likely to falsely cause members of the trade and/or of

the purchasing public to believe any goods or services of Defendants are in any way endorsed

by, approved by, and/or associated with Louis Vuitton; from using any reproduction, counterfeit,

infringement, copy, or colorable imitation of the Louis Vuitton Marks in connection with the

publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing,

applying, annexing or using in connection with the sale of any goods, a false description or

representation, including words or other symbols tending to falsely describe or represent

Defendants' goods as being those of Louis Vuitton, or in any way endorsed by Louis Vuitton and

from offering such goods in commerce; from engaging in search engine optimization strategies

using colorable imitations of the Louis Vuitton name or trademarks; and from otherwise unfairly competing with Louis Vuitton.

      b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C §1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Louis Vuitton Marks.

      c.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Louis Vuitton's request, those acting in concert or participation with Defendants who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting service to any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the Louis Vuitton Marks.

      d.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Louis Vuitton to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Louis Vuitton Mark.

e.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Louis Vuitton to serve the injunction on the domain name registrar(s) and/or the privacy protection service(s) for the Subject Domain Names to disclose to Louis Vuitton the true identities and contact information for the registrant of the Subject Domain Name.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, that upon Louis Vuitton's request, the top level domain (TLD) Registry for each of the Subject Domain Names, and any other domains used by Defendants,  or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Louis Vuitton Marks, to the IP addresses where the associated websites are hosted.

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, canceling for the life of the current registration or, at Louis Vuitton's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of the Louis Vuitton Marks at issue to Louis Vuitton's control so they may no longer be used for illegal purposes.

h.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Louis Vuitton to request any Internet search engines or service provider referring or linking users to any URL of the Subject Domain Names, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the Subject Domain Names and/or permanently disable the references or links to all URLs of the Subject Domain Names used by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Louis Vuitton Marks, based upon Defendants' unlawful activities being conducted via the Subject Domain Names as a whole and via any specific URLs identified by Louis Vuitton.

i.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, authorizing Louis Vuitton to request any service providers, including specifically CloudFlare, Inc., to permanently cease providing any services to the Defendant in connection with any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits of the Louis Vuitton Marks, including permanently deleting the Subject Domain Names from its DNS used for the DoH (1.1.1.1).

j.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s), to assign all rights, title, and interest, to its Subject Domain Name(s) to Louis Vuitton and, if within five (5) days of entry of such order any Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

k.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the Subject Domain Name(s) and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

l.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s), to instruct the Registrar(s) for each Subject Domain Name(s) to permanently close the domain registration account(s) in which any Subject Domain Name(s) are located and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at any non-complying Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

m.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring each Defendant, its agent(s) or assign(s), to instruct all of its service providers, including specifically CloudFlare, Inc., to permanently cease providing any services to the Defendant in connection with any and all domain names, including but not limited to the Subject Domain Names, and websites through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits of the Louis Vuitton Marks, including permanently deleting the Subject Domain Names from its DNS used for the DoH (1.1.1.1), and, if within five (5) days of entry of such order any Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at

Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

        n.      Entry of an order requiring Defendants to account to and pay Louis Vuitton for all profits and damages resulting from Defendants' trademark counterfeiting and infringing activities and that the award to Louis Vuitton be trebled, as provided for under 15 U.S.C. §1117, or that Louis Vuitton be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

        o.      Entry of an order requiring Defendants 1–19 to account to and pay Louis Vuitton for all profits and damages resulting from those Defendants 1–19's cybersquatting activities and that the award to Louis Vuitton be trebled, as provided for under 15 U.S.C. §1117, or, at Louis Vuitton's election with respect to Count III, that Louis Vuitton be awarded statutory damages from Defendants 1–19 in the amount of one hundred thousand dollars ($100,000.00) per cybersquatted domain name used as provided by 15 U.S.C. §1117(d) of the Lanham Act.

        p.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Louis Vuitton's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

        q.      Entry of an award of pre-judgment interest on the judgment amount.

        r.      Entry of an Order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

        s.       Entry of an order for any further relief as the Court may deem just and

proper.

DATED: February 1, 2022.        Respectfully submitted,

                                           STEPHEN M. GAFFIGAN, P.A.

                                         By: **Stephen M. Gaffigan/**_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiff Louis Vuitton Malletier

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Dame |
|---|---|
| 1 | lvhut.net |
| 2 | louis-special-sale.shop |
| 3 | goslouisvuitton.com |
| 4 | louisved.xyz |
| 5 | louisvued.com |
| 6 | louisvuitton-my.site |
| 7 | lovelvbag.store |
| 8 | lvicon.online |
| 9 | lv-malaysia.store |
| 10 | lvoutlet.ca |
| 11 | lvreplicashop.com |
| 12 | lv-thegardens.com |
| 13 | malaysia-lv.com |
| 14 | malaysia-lvbag.store |
| 15 | my-lvbag.info |
| 16 | perfectlouisvuittonsale.com |
| 17 | replicalvonline.com |
| 18 | thegardens-lv-kl.com |
| 19 | toplvmall.com |
| 20 | aaaluxurybags.com |
| 21 | 66shop.ru |
| 22 | aaaclothing.ru |
| 23 | aaapurse.nu |
| 24 | aaareplica.co |
| 25 | aaraplica.com |
| 26 | abcbyiktuys.pw |
| 27 | acmaaslea.top |
| 28 | addnss.com |
| 29 | aimji.live |
| 30 | annjxauo.top |
| 31 | associateadapt.top |
| 32 | bagsreplica.de |
| 33 | baofse.top |
| 34 | bdkind.store |
| 35 | bdznednz.top |

| 36 | bestbag.shop |
|---|---|
| 37 | bestqualityreplica.ru |
| 38 | btsmud.top |
| 39 | buyebag.top |
| 40 | bvcnta.top |
| 41 | bxsyeao.top |
| 42 | cbhjskv.top |
| 43 | cdftbag.top |
| 44 | chinareplicbagas.com |
| 44 | dolabuy.ru |
| 44 | replicacloibag.com |
| 44 | thebagsreplicas.com |
| 45 | cmsbeb.top |
| 46 | cnaveua.top |
| 47 | cnvjgrks.top |
| 48 | copybagssale.com |
| 49 | copyforbags.com |
| 50 | corabags.ru |
| 51 | csffbg.top |
| 52 | daphnesale.ru |
| 53 | demakoaf.top |
| 54 | dfsdfgrg.shop |
| 55 | dropthenew.com |
| 56 | dvrcbht.top |
| 57 | e8bags.co |
| 58 | ehdgfsh.top |
| 59 | eyushi.top |
| 60 | ezzcc.com |
| 61 | fabag.ru |
| 62 | fakescu.com |
| 63 | famouside.com |
| 64 | fashionbags-sale.com |
| 65 | fashionhouse.buzz |
| 66 | fasionoto.ru |
| 67 | fauxbagsale.com |
| 68 | fcdshsu.top |
| 68 | mnchwa.top |
| 69 | fxtayhk.top |
| 70 | gdhnawo.top |
| 71 | handbagsreplicastore.com |

| 72 | hbndgyw.top |
|---|---|
| 73 | hellosneaker.ru |
| 74 | kindsneaker.net |
| 75 | kopi-6.com |
| 76 | krosshop24.ru |
| 77 | lianwholesale.com |
| 78 | lilysale.ru |
| 78 | lilysite.ru |
| 79 | luxcrime.ru |
| 79 | lux-crime.ru |
| 80 | luxebagseu.com |
| 81 | luxesborse.com |
| 82 | luxruy.com |
| 83 | luxury2018.com |
| 84 | luxurybagaa.com |
| 85 | luxurybagoutlet.com |
| 86 | luxurymybag.com |
| 87 | luxuryshoesu.de |
| 88 | luxurysuu.com |
| 89 | luxurytasticreps.ru |
| 90 | luxusdiva.com |
| 91 | mandybrands-03.com |
| 92 | mcdeue.top |
| 93 | mchaui.top |
| 94 | mckswh.top |
| 95 | mdjitcx.top |
| 96 | methodc.com |
| 97 | mfjernc.top |
| 98 | mfvjrsew.top |
| 99 | mgifkdls.top |
| 100 | mgsaywa.top |
| 101 | mhsebag.top |
| 102 | mhycbag.top |
| 103 | mnxhua.top |
| 104 | mnxwok.top |
| 105 | modecina.cn |
| 105 | modecina.ru |
| 106 | mxnbzw.top |
| 107 | mxsajkw.top |
| 108 | mzbhwu.top |

| 109 | nbvrtyf.top |
|---|---|
| 110 | ncaxzjbn.top |
| 111 | nceubag.top |
| 112 | ncmfjrs.top |
| 113 | ncrsfsd.top |
| 114 | ncyesizs.top |
| 115 | ndsyve.top |
| 116 | neverfulloutlet.com |
| 117 | newbuybuystations.com |
| 118 | ngfsfsfd.top |
| 119 | nmjhac.top |
| 120 | nvxdedx.top |
| 121 | nyseti.top |
| 122 | originalhandbag.top |
| 123 | outletborsa.net |
| 124 | perfectfakebags.com |
| 125 | pkajstore.com |
| 126 | pkshoe.com |
| 126 | pkshoe.net |
| 127 | popbrandcenter.com |
| 128 | pursevalleyfactory.la |
| 129 | qdfdny.top |
| 130 | qdncz.top |
| 131 | qualitybestbags.com |
| 132 | realfashion24.com |
| 133 | replica-watches-germany.com |
| 134 | replicawatchespro.co |
| 135 | replicaxi.com |
| 136 | resinstatue.club |
| 137 | sdehbag.top |
| 138 | sffp.shop |
| 139 | sneakerinbox.com |
| 140 | taikcmj.top |
| 141 | tangerjapanoutlet.com |
| 142 | thcodway.com |
| 143 | theybag.top |
| 144 | tikhub.ru |
| 145 | toplifeshop.com |
| 146 | towbag.shop |
| 147 | udifskb.top |

| 148 | uenmbag.top |
| 149 | uhdsahwo.top |
| 150 | ujhyfsdt.top |
| 151 | vipsluxurybags.com |
| 152 | vlixcolux.com |
| 153 | vmnxjews.top |
| 154 | wdvbf.top |
| 155 | wfvnbag.top |
| 156 | xcfwnm.top |
| 157 | xndjosen.top |
| 158 | xnhyao.top |
| 159 | xnwyid.top |
| 160 | yangyuejianqiali.com |
| 161 | yfkew.com |
| 162 | yreplicabags.com |
| 163 | ytgfdlcm.top |
| 164 | ytrfegh.top |