UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-60228-CIV- BLOOM/VALLE

LOUIS VUITTON MALLETIER,

        Plaintiff,

vs.

LVHUT.NET, *et al.*,

        Defendants.

_____/

**PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Louis Vuitton Malletier ("Louis Vuitton"), hereby does apply, on an *ex parte* basis, for entry of a temporary restraining order, and upon expiration of the temporary restraining order and a preliminary injunction against Defendants, the individuals, partnerships, and unincorporated associations identified on Schedule "A" hereto (collectively "Defendants") pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C §1651(a). In support thereof, Louis Vuitton submits the following Memorandum of Law.[1]

## I.    INTRODUCTION

Defendants are knowingly and intentionally promoting, advertising, distributing, offering for sale and selling goods bearing counterfeits and confusingly similar imitations of Louis Vuitton's registered trademarks within this district and throughout the United States, through various fully interactive, commercial Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names").

---

[1] Louis Vuitton filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "Application for TRO") and the supporting declarations and exhibits with the Court in accordance with Local Rule 5.4(d), which requires, unless the Court directs otherwise, *ex-parte* filings be restricted from public view.  However, Louis Vuitton is not requesting the Court seal its Order on the Application for TRO. Further, Louis Vuitton respectfully requests that upon entry of the Court's Order on the Application for TRO,  the portions of the docket relating to Plaintiff's Application for TRO be returned to the public portion of the Court file.

Defendants' unlawful activities have caused and will continue to cause Louis Vuitton irreparable injury. Among other things, Defendants (1) deprive Louis Vuitton of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defraud the public into thinking their goods are valuable, authorized goods of Louis Vuitton; (3) deceive the public as to Louis Vuitton's sponsorship of and/or association with their goods and the websites through which such goods are marketed and sold; and (4) wrongfully trade and capitalize on Louis Vuitton's reputation and goodwill and the commercial value of Louis Vuitton's trademarks.

Moreover, Defendants have wrongfully damaged Louis Vuitton's ability to market its goods and educate consumers about its brand via the Internet in a free and fair marketplace and are participating in the creation and/or maintenance of an illegal marketplace on the World Wide Web ("Web"), the purposes of which are to (i) confuse consumers regarding the source of Defendants' goods for profit, and (ii) expand the marketplace for illegal, counterfeit Louis Vuitton branded goods while shrinking the legitimate marketplace for genuine Louis Vuitton branded goods.  The natural and intended byproduct of Defendants' actions is the erosion of the overall legitimate marketplace in which Louis Vuitton operates and the goodwill associated with Louis Vuitton's name. Defendants should not be permitted to continue their unlawful activities, which are causing Louis Vuitton ongoing irreparable harm.  Accordingly, Louis Vuitton seeks entry of a temporary restraining order (i) prohibiting Defendants' wrongful use of Louis Vuitton's trademarks, and (ii) disabling Defendants' websites operating under the Subject Domain Names.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Rights.

Louis Vuitton is the owner of all rights in and to the federally registered trademarks listed in Paragraph 4 of the Declaration of Hadrien Huet in Support of Plaintiff's Application for TRO (the "Louis Vuitton Marks") which are used in connection with the manufacture and distribution of high-quality goods in the categories identified therein. (See Declaration of Hadrien Huet in Support of Plaintiff's Application for TRO ("Huet Decl.") ¶¶ 4-5, filed herewith; see also United States Trademark Registrations for the Louis Vuitton Marks at issue attached as Comp. Ex. "1" to the Complaint [1-2], incorporated herein by reference.)  The Louis Vuitton Marks are symbols

of Louis Vuitton's quality, reputation, and goodwill and have been continuously used since registration. (<u>See</u> Huet Decl. ¶ 7.)  Moreover, Louis Vuitton has expended substantial time, money, and resources developing, advertising, and otherwise promoting its trademarks. (<u>See</u> <u>id.</u> at ¶¶ 6-7.)  Accordingly, the Louis Vuitton Marks are famous marks as the term is used in 15 U.S.C. § 1125(c)(1).

Furthermore, Louis Vuitton has extensively used, advertised, and promoted the Louis Vuitton Marks in the United States interstate commerce, in association with high quality luxury goods and has carefully monitored and policed the use of the Louis Vuitton Marks. (<u>See</u> Huet Decl. ¶¶ 6-7.)  As a result of Louis Vuitton's efforts, the Louis Vuitton Marks have acquired fame in the consumer market. (<u>Id.</u>) The Louis Vuitton Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning. (<u>Id.</u>) The Louis Vuitton Marks have come to symbolize the enormous goodwill of Louis Vuitton's genuine products throughout the United States. (<u>Id.</u>) At all times relevant hereto, Defendants have been aware of Louis Vuitton's (a) ownership of the Louis Vuitton Marks; (b) exclusive rights to use and license such Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Louis Vuitton Marks.

### B.      Defendants Wrongfully Use Plaintiff's Trademarks in Connection With the Promotion and Sale of Counterfeit Branded Goods.

Defendants do not have, nor have they ever had, the right or authority to use the Louis Vuitton Marks for any purpose. (<u>See</u> Huet Decl. ¶ 9.)  However, despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale goods through their ecommerce stores operating under the Subject Domain Names bearing counterfeit and infringing trademarks which are substantially indistinguishable from and/or colorable imitations of one or more of the Louis Vuitton Marks, without authorization ("Defendants' Goods"). (<u>See</u> Huet Decl. ¶¶ 9-11; Declaration of Virgilio Gigante in Support of Plaintiff's Application for TRO ("Gigante Decl.") ¶¶ 2–3, filed herewith); <u>see also</u> relevant web page captures from Defendants' fully interactive,[2]  commercial Internet

---

[2] Some Defendants use their Subject Domain Names to act as supporting domain names to direct traffic to their fully interactive commercial websites operating under other Subject Domain Names, from which consumers can complete purchases. (<u>See</u> Gigante Decl. ¶ 2, n.1.) Some of the supporting domain names, when accessed directly, appear to be blog style or non-operating websites; however, when visited from a search engine such as Google, visitors are redirected to the fully interactive websites operating under other Subject Domain Names. (<u>Id.</u>)  Other

websites operating under the Subject Domain Names displaying the Louis Vuitton branded items offered for sale ("Defendants' Websites") attached as Comp. Ex. "2" to the Complaint [ECF Nos. 1-3 through 1-5], incorporated herein by reference.)

Given Defendants' copying of the Louis Vuitton Marks, genuine goods bearing the Louis Vuitton Marks and the Defendants' Goods are indistinguishable to consumers, both at the point of sale and post-sale. Additionally, Defendants 1–19 have fraudulently registered their respective domain name(s) using names that incorporate at least one of the Louis Vuitton Marks. By using the Louis Vuitton Marks, Defendants 1–19 have created a false association between their counterfeit and infringing goods and websites and Louis Vuitton. Such false association is in violation of 15 U.S.C. § 1125(a) and is causing and will continue to cause Louis Vuitton irreparable injury. Moreover, Defendants 1–19's registration of domain names incorporating Louis Vuitton's registered trademarks constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

Louis Vuitton's representative, who has been trained to identify the distinctions between genuine Louis Vuitton's branded merchandise and counterfeit copies of the same, reviewed and visually inspected each Defendants' Websites, including images reflecting the various items bearing the Louis Vuitton Marks offered for sale by Defendants through the Internet websites operating under the Subject Domain Names, and/or the websites to which those domain names either automatically or manually redirect, and determined the products were non-genuine, unauthorized versions of Louis Vuitton's products. (See Huet Decl. ¶¶ 10–11.)

Section 45 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

---

supporting domain names either automatically redirect and forward to a fully interactive, commercial Internet website operating under one of the Subject Domain Names or redirect a fully interactive, consumer to a commercial Internet website operating under one of the Subject Domain Names upon clicking a product or link on the website. (Id.) Accordingly, the web pages for the Subject Domain Names which operate as redirecting websites are included with the web pages to which those sites redirect, as shown in Comp. Exhibit "2" to Plaintiff's Complaint. (Id.)

Additionally, some Subject Domain Names do not offer the shopping cart feature; rather, consumers are able to browse the listings of Louis Vuitton branded products online via the websites, ultimately allowing customers to inquire and make direct purchases of the Louis Vuitton branded products via electronic communication, including e-mail and/or private messaging services such as WhatsApp and WeChat, or via phone. (Id. ¶ 2, n.2.)

Also, using the "ocular test" of direct comparison, courts have found that even marks which are slightly modified from the registered marks copied are to be considered counterfeit marks. See Fimab-Finanziaria Maglificio vs. Helio Import/Export, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). A comparison of the Louis Vuitton Marks to the marks used by Defendants in connection with the promotion and sale of Defendants' Goods reveals the obvious counterfeit and infringing nature of Defendants' Goods. (Compare Louis Vuitton's Trademark Registrations [ECF No. 1-2] with Defendants' Websites [ECF Nos. 1-3 through 1-5].)

Defendants' Goods bearing counterfeits and infringements of the Louis Vuitton Marks are being advertised, promoted, offered for sale, sold, and/or displayed in search engine results pages by Defendants to consumers in this district and throughout the United States. (Huet Decl. ¶¶ 9–11; Gigante Decl. ¶ 2; see also Defendants' Websites [ECF Nos. 1-3 through 1-5].) Defendants are making substantial sums of money by preying upon members of the general public, many of whom have no knowledge Defendants are defrauding them through the sale of worthless counterfeit and infringing branded goods.  Defendants are also falsely representing to consumers that their counterfeit and infringing branded goods are genuine, authentic, endorsed, and authorized by Louis Vuitton.  Ultimately, Defendants' Internet websites amount to nothing more than illegal operations infringing on the intellectual property rights of Louis Vuitton and others.  The Subject Domain Names are themselves a substantial part of the means by which Defendants further their scheme and cause harm to Louis Vuitton.

### C.  Defendants Unfairly Compete with Plaintiff Through Search Engine Optimization Using Counterfeits of Plaintiff's Trademarks.

Genuine Louis Vuitton branded goods are widely legitimately advertised, promoted, offered for sale, and discussed by Louis Vuitton and unrelated third parties via the Internet. (Huet Decl. ¶ 12.)  Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Louis Vuitton's overall marketing and consumer education efforts. (Id. at ¶ 13.) Thus, Louis Vuitton expends significant monetary resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO") strategies, which allow Louis Vuitton and others to educate consumers fairly and legitimately about the value associated with the Louis Vuitton brand and the goods sold thereunder. (Id.)

The rise of the importance of SEO and other marketing practices and the value of high visibility on the Web have not been lost on those, such as Defendants herein, engaged in the illegal business of selling counterfeit branded goods.  To the contrary, counterfeiters and infringers, such as Defendants, have embraced the SEO concept and are concurrently leveraging it to cause greater and more significant harm to brand owners, including Louis Vuitton. Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Louis Vuitton's genuine goods. Through their combined actions, Defendants are causing individual, concurrent and indivisible harm to Louis Vuitton and the consuming public by (i) depriving Louis Vuitton and other third parties of the ability to fairly compete for space within search engine results, (ii) causing an overall degradation of the value of the goodwill associated with the Louis Vuitton Marks, (iii) increasing Louis Vuitton's overall cost to market its goods and educate consumers about the brand via the Web and/or (iv) creating and maintaining an illegal marketplace using the Web which perpetuates the ability of Defendants to confuse consumers and harm Louis Vuitton with impunity. (Huet Decl. ¶¶ 12–14.)

Defendants, each of whom is likely aware of the existence of the illegal marketplace and the activities of the others to perpetuate the same, are combining the force of their actions in order to cause individual, concurrent and indivisible harm to Louis Vuitton and consumers.  By engaging in SEO and other market building strategies based upon an illegal use of the Louis Vuitton Marks, Defendants are obliterating the otherwise open and available marketplace space on the Web in which Louis Vuitton has the right to fairly market its goods and associated message. (See id. at ¶ 14.)  Specifically, at a minimum, Defendants use unauthorized counterfeits and infringements of Louis Vuitton's famous name and the Louis Vuitton Marks in order to make their websites selling illegal goods appear more relevant and attractive to consumers searches for Louis Vuitton related goods and information online. (See id.)  Meaningful space on the Web, including search engine results page space, is akin to real estate – there is only so much of it available.  Thus, website operators such as Louis Vuitton and Defendants spend substantial sums of money incorporating concepts and popular search terms, such as the Louis Vuitton Marks, into their on-site and off-site content in order to promote visibility on the Web and be seen by search engines and returned as part of relevant search results across an array of search phrases.  The primary difference between what Louis Vuitton and Defendants are doing, of

course, is that Louis Vuitton is doing so through the legal use of its trademarks in which it has made substantial economic investment, and Defendants are doing so through subterfuge and illegal behavior, including counterfeiting and infringing the Louis Vuitton Marks and helping to create and maintain an illegal marketplace by which they sell their illicit goods and confuse consumers.

For purposes of this Application, Louis Vuitton does not contend that it or any third party has the exclusive right to appear in any particular location in the results of any search engine across any particular array of search terms; however, Louis Vuitton does contend that it has the right to fairly compete for visibility on the Web and search engine results space unfettered by unfair competition stemming from an illegal use of Louis Vuitton's trademarks. Louis Vuitton's right to fairly compete for the best Internet real estate and its reputation are being trampled by the combined efforts of Defendants.  Louis Vuitton, its trademark rights, and associated goodwill are suffering death by 1,000 cuts. While each Defendant's action alone cause harm to Louis Vuitton, the combined force and effect of all of Defendants' actions is creating an entirely illegal marketplace and causing the single indivisible harm of the erosion of the goodwill associated with the Louis Vuitton Marks and the denial of Louis Vuitton's right to fairly compete for visibility on the Web, including within search engine results.

## III.     ARGUMENT

### A.     A Temporary Restraining Order is Essential to Prevent Immediate Injury.

Louis Vuitton is seeking entry of a temporary restraining order (i) prohibiting Defendants' further wrongful use of Louis Vuitton's trademarks and (ii) disabling Defendants' websites operating under the Subject Domain Names during the pendency of this action. The requested relief is necessary to immediately stop Defendants' ongoing, intentional confusion of consumers and the associated irreparable harm occurring to Louis Vuitton.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where it clearly appears from the specific facts shown by affidavit "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Moreover, temporary restraining orders are available on an *ex parte* basis if the movant shows through an affidavit that there is a threat of intervening

immediate, irreparable harm before the adverse party may be heard in opposition and the movant's attorney certifies in writing why notice should not be required. Fed. R. Civ. P. 65(b). As demonstrated herein, such irreparable and immediate injury will result to Louis Vuitton if Defendants' wrongful activities are not immediately stopped by the issuance of a temporary restraining order.

Defendants fraudulently promote, advertise, offer to sell and sell goods bearing counterfeits and infringements of one or more of the Louis Vuitton Marks via the Internet websites operating under, at least, the Subject Domain Names. By their actions, Defendants are creating a false association in the minds of consumers between Defendants and Louis Vuitton. Specifically, Defendants are wrongfully using counterfeits and infringements of the Louis Vuitton Marks to promote and attract customers to their website businesses, and to expand their illegal marketplace. Counterfeits and infringements of the Louis Vuitton Marks are being used by Defendants to increase traffic to their illegal businesses which offer consumers a variety of counterfeit and infringing goods, including Louis Vuitton branded goods. The entry of a temporary restraining order would serve to immediately stop Defendants from benefiting from their wrongful use of the Louis Vuitton Marks and would preserve the status quo until such time as a hearing can be held. Thus, a temporary restraining order is appropriate. See Dell Inc. v. BelgiumDomains, LLC, Case No. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.").

Absent a temporary restraining order without notice, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights.  Specifically, the Subject Domain Names and associated websites at issue are under the complete control of Defendants, and they have the ability to modify registration data and content, change hosts and, most importantly, redirect consumer traffic to other websites they control. (Gigante Decl. ¶ 4.) Moreover, Defendants operate Internet websites, which they optimize for the sale of counterfeit and infringing Louis Vuitton branded merchandise.  The optimization process provides Defendants with their power to unfairly compete with Louis Vuitton by catapulting their illegal websites into top search engine results.  All of that optimization power, built through the illegal use of the Louis Vuitton Marks, can easily be transferred to a new domain name in a matter of minutes through what is known as a redirect to push traffic from the Subject Domain Names to

new domains not yet identified. (See id. at ¶¶ 4–6.) The result would be to slingshot the new domains to the top of the search engine results pages by leveraging the Internet traffic to the domains in suit, which was built through the illegal use of the Louis Vuitton Marks. (See id.)  In short, Defendants would completely erase the status quo by transferring all of the benefits of their prior illegal activities to new websites. (See id.)

Federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis. Time Warner Enter. Co. v. Does #1-2, 876 F. Supp. 407, 410–11 (E.D.N.Y. 1994) (compiling cases and noting, "[w]here plaintiffs have shown that a danger exists of destroying or transferring infringing goods, courts in this Circuit have not hesitated to grant *ex parte* orders under either the Lanham Act or the Copyright Act."); see also Louis Vuitton Malletier v. aaalvsale.com, Case No. 21-cv-60790-BB (S.D. Fla. April 14, 2021) (Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order). This Court should prevent an injustice from occurring by issuing a temporary restraining order which precludes Defendants from continuing to display their infringing content via the websites operating under the Subject Domain Names and which, after allowing an opportunity for objections, temporarily places control of the websites in the hands of the Court.  Only such an order will prevent ongoing irreparable harm and maintain the status quo.

### B.    Standard for Temporary Restraining Order and Preliminary Injunction.

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005); see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary

injunction). Louis Vuitton's evidence establishes all of the relevant factors. Accordingly, preliminary injunctive relief is appropriate.

> **1.**   **Probability of Success on the Merits of Plaintiff's Claims.**

>> **a)**   **Likelihood of Success on Counterfeiting and Infringement Claim.**

Title 15 U.S.C. §1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." Louis Vuitton must demonstrate (1) ownership of the trademarks at issue; (2) Defendants' use of the trademarks is without Louis Vuitton's authorization; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. See 15 U.S.C. § 1114(1). Louis Vuitton's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

The first two elements of Louis Vuitton's trademark counterfeiting and infringement claims are easily met. The Louis Vuitton Marks are owned by Louis Vuitton and registered on the Principal Register of the United States Patent and Trademark Office, and all of the Louis Vuitton Marks have become "incontestable" under 15 U.S.C. §§ 1058 and 1065. (See Huet Decl. ¶ 4; see also Louis Vuitton Trademark Registrations attached as Comp. Ex. "1" to the Complaint [ECF No. 1-2].) See also Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1554 (S.D. Fla. 1990) ("Incontestable status provides conclusive evidence of the registrant's exclusive right to use the registered mark, subject to §§ 15 and 33(b) of the Lanham Act."). Moreover, Defendants have never had the right or authority to use the Louis Vuitton Marks. (Huet Decl. ¶ 9.)

The Eleventh Circuit uses a seven-factor test in determining the third element, likelihood of confusion. See Ross Bicycles, Inc. v. Cycles USA, Inc., 765 F.2d 1502, 1506 (11th Cir. 1985). The factors, as outlined in Safeway Store, Inc. v. Safeway Discount Drugs, Inc., are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendants' intent; and (7) evidence of actual confusion. See 675 F.2d 1160, 1164 (11th Cir. 1982); see also Lipscher v.

LRP Publ'ns, Inc., 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. (Id.)

### (1)     Strength of the Marks.

The spectrum of protectability and strength for trademarks is divided into four primary types of designations: (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Arbitrary or fanciful marks are the strongest and deemed inherently distinctive and entitled to protection. (See id.) It cannot be seriously disputed that the Louis Vuitton Marks are strong, arbitrary, and fanciful marks.

The Louis Vuitton Marks have also acquired secondary meaning. Louis Vuitton has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Louis Vuitton Marks. (Huet Decl. ¶¶ 6–7.)  The Louis Vuitton Marks enjoy widespread recognition and are prominent in the minds of consumers. (Id.)

### (2)     Similarity of the Marks.

Likelihood of confusion is greater when an infringer uses the exact trademark. Turner Greenberg Assocs. v. C & C Imps., 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004).  Defendants are using marks which are identical to the Louis Vuitton Marks. (Compare Louis Vuitton's Trademarks Registrations [ECF No. 1-2] with Defendants' Websites [ECF Nos. 1-3 through 1-5].)

### (3)     Similarity of the Goods.

"The greater the similarity between the products and services, the greater the likelihood of confusion." John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 976 (11th Cir. 1983). Defendants are selling the same types of goods Louis Vuitton sells. (Huet Decl. ¶¶ 5, 9–11; see generally Defendants' Websites [ECF Nos. 1-3 through 1-5].)  Because they bear counterfeits and infringements of the Louis Vuitton Marks, Defendants' Goods appear virtually identical to Louis Vuitton's genuine products in the consumer market.  Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d at 976.

### (4)     Similarity of Sales Method and (5) Advertising Method.

Convergent marketing channels increase the likelihood of confusion. See Turner Greenberg Assocs., 320 F. Supp. 2d at 1332.  Both Louis Vuitton and Defendants advertise and sell their products using at least one of the same marketing channels, the Internet, in the same geographical distribution areas within the United States, including the Southern District of Florida. (Huet Decl. ¶¶ 9–11; see generally Defendants' Websites [ECF Nos. 1-3 through 1-5].) Thus, the conditions of purchase for both parties are unmistakably identical, and as such, Louis Vuitton is directly competing with Defendants' products.

### (6)     Defendants' Intent.

This district has held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d at 1333, citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999). In a case of clear-cut copying, it is appropriate to infer Defendants intended to benefit from Louis Vuitton's reputation, to Louis Vuitton's detriment. See Playboy Ent., Inc. v. P.K. Sorren Export Co. Inc. of Fla., 546 F. Supp. 987, 996 (S.D. Fla. 1982).

### (7)     Evidence of Actual Confusion.

Actual confusion is unnecessary to establish infringement, since, the test is likelihood of confusion. See Frehling Enters. v. Int'l Select Group, Inc., 192 F.3d 1330, 1340 (11th Cir. 1999). In this case, however, it is reasonable to infer actual confusion exists in the marketplace based upon the circumstantial evidence available. Defendants are advertising, offering to sell and selling counterfeit goods identical in appearance to those sold by Louis Vuitton. (Huet Decl. ¶¶ 9–11; see generally Defendants' Websites [ECF Nos. 1-3 through 1-5].)  Even if buyers are told of the bogus nature of Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will obviously be confused, because they are viewing goods bearing the Louis Vuitton Marks which undeniably creates the impression they are viewing genuine goods sold or authorized by Louis Vuitton. Such post-sale confusion is entirely actionable. See Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc., 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused.").

The above seven factors weigh only in Louis Vuitton's favor. Louis Vuitton has therefore shown a probability of success on the merits of its trademark counterfeiting and infringement claim.

### b)     Likelihood of Success on False Designation of Origin Claim.

As with a trademark infringement claim, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue. Two Pesos, Inc., 505 U.S. at 780. Whether the violation is called infringement, unfair competition or false designation of origin, the test is identical -- is there a "likelihood of confusion?" Id.  Therefore, because Louis Vuitton has established the merits of its trademark counterfeiting and infringement claim against Defendants, a likelihood of success is also shown as to Louis Vuitton's false designation of origin claim.

### c)     Likelihood of Success on Cybersquatting Claim.

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), Louis Vuitton must prove that (1) the Louis Vuitton Marks are distinctive or famous and entitled to protection; (2) Defendants' domain names are identical or confusingly similar to the Louis Vuitton Marks; and (3) Defendants registered or used the domain names with a bad faith intent to profit. Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006). The evidence submitted herewith satisfies the requirements of 15 U.S.C. § 1125(d).

Defendants 1–19 have registered domain names which incorporate, at least, one of the Louis Vuitton Marks in its entirety surrounded by descriptive or generic terms, rendering the domain names nearly identical as compared to the Louis Vuitton Marks (the "Cybersquatted Subject Domain Names.") See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("The taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law.").  Moreover, Courts have found that even slight

differences between a domain name and a registered mark, such as the addition of minor or generic words to the disputed domain name, is irrelevant. See Ford Motor Co. v. Greatdomains.com, Inc., 177 F. Supp. 2d 635, 642 (E.D. Mich. 2001) (holding "unless words or letters added to the plaintiff's mark within the domain name clearly distinguish it from the plaintiff's usage, allegations that a domain name incorporates a protected mark generally will suffice.").

The ACPA lists nine nonexclusive factors for courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. § 1125(d)(1)(B)(i); see also Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1346. The nine factors are not meant to be exclusive and the Court may consider all relevant factors in making a determination of bad faith. Id. at 1347. Ultimately, each factor addresses whether "the defendant's use of the disputed domain name is legitimate – i.e., for some purpose other than simply to profit from the value of the trademark." Ford Motor Co., 177 F. Supp. 2d at 642.  An examination of the bad faith factors compels the conclusion that Defendants 1–19's registration and use of the Cybersquatted Subject Domain Names violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as Defendants 1–19 have no rights in the Louis Vuitton Marks and Defendants 1–19 have never used those Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V), (IX), weigh in Louis Vuitton's favor. As discussed above, Defendants 1–19 have clearly intentionally incorporated the Louis Vuitton Marks in their Cybersquatted Subject Domain Name(s) to divert consumers looking for Louis Vuitton's Internet website to their own Internet websites for commercial gain.  Such consumers are likely to be confused as to the source and sponsorship of Defendants 1–19's Internet websites and mistakenly believe the websites are endorsed by and/or affiliated with Louis Vuitton. This is especially true in light of the fact that the Internet websites are offering for sale counterfeit Louis Vuitton branded goods.  Clearly, Defendants 1–19's registration of the Cybersquatted Subject Domain Names in order to sell and offer for sale counterfeit and infringing Louis Vuitton branded goods, knowing the domain names are identical or confusingly similar to Louis Vuitton's indisputably famous and distinctive marks, ensures a likelihood of confusion among consumers. See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13

(October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act."). Thus, Louis Vuitton has shown a likelihood of success on the merits of its cybersquatting claim.

> **d)  Likelihood of Success on Common Law Unfair Competition and Common Law Trademark Infringement Claims.**

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. See Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims.") Additionally, the analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. PetMed Express, Inc. v. MedPets.com, Inc., 336 F.Supp.2d 1213, 1217–18 (S.D. Fla. 2004). As discussed above, Louis Vuitton has satisfied the three elements of its trademark counterfeiting and infringement claim against Defendants, establishing that a likelihood of confusion exists herein. Accordingly, Louis Vuitton is also likely to succeed on the merits of its common law unfair competition and trademark infringement claims.

> **2.  Plaintiff is Suffering Irreparable Injury.**

As the Eleventh Circuit expressed it: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." Ferrellgas Ptnrs., L.P. v. Barrow, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where a plaintiff has demonstrated it will lose control of its reputation as a result of a defendant's activities. Id. A likelihood of confusion exists herein because Defendants have engaged in counterfeiting and infringing activities using spurious designations indistinguishable from the Louis Vuitton Marks.

> **3.  The Balance of Hardship Tips Sharply in Plaintiff's Favor.**

Louis Vuitton has expended substantial time, money and other resources to develop the quality, reputation, and goodwill associated with the Louis Vuitton Marks. (Huet Decl. ¶¶ 6–7.)

Should Defendants be permitted to continue their trade in counterfeit goods, Louis Vuitton will suffer losses and damage to its reputation. (See id. at ¶ 15.)  However, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued, because Defendants have no right to engage in their present activities.

### 4.    The Relief Sought Serves the Public Interest.

Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' Goods as Louis Vuitton's genuine goods. The public has an interest in not being misled as to the origin of trademarked products. Nailtiques Cosmetic Corp. v. Salon Sciences, Corp., 1997 WL 244746, 5, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. 1997) ("The interests of the public in not being victimized and misled are important considerations in determining the propriety of granting injunctive relief.").

### C.    The Equitable Relief Sought is Appropriate.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

### 1.    Entry of an Order Immediately Enjoining Defendants' Unauthorized Use of Plaintiff's Trademarks is Appropriate.

Louis Vuitton requests an order requiring Defendants immediately cease all use of the Louis Vuitton Marks, or substantially similar marks, including on or in connection with all Internet websites and domain names owned and operated, or controlled by them.  Such relief is necessary to stop the ongoing harm to Louis Vuitton's trademarks and goodwill and to prevent Defendants from continuing to benefit from the increased traffic to their illegal website operations created by their unlawful use of the Louis Vuitton Marks. This Court and others have authorized immediate injunctive relief in cases involving the unauthorized use of trademarks.[3]

---

[3] See, e.g., Louis Vuitton Malletier v. aaalvsale.com, Case No. 21-cv-60790-BB (S.D. Fla. April 14, 2021) (Order Granting Ex Parte Application for Entry of Temporary Restraining Order); Whirlpool Corporation v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 21-cv-60493-BB (S.D. Fla. March 4, 2021) (same); Richemont International SA v. montblanchot.com, Case No. 20-cv-61941-BB (S.D. Fla. Sept. 25, 2020) (same); Apple Corps Limited, et al. v. lockalita.com, Case No. 20-cv-61916-BB (S.D. Fla. Sept. 23, 2020) (same); MPL Communications Limited v. 123ohoh Store, Case No. 19-cv-62891-BB (S.D. Fla. Nov. 22, 2019) (same); Chanel, Inc. v. 7areplica.ru, Case No. 19-cv-61532-BB (S.D. Fla. June 24, 2019)

**2.**     **Entry of an Order Prohibiting Transfer of the Subject Domain Names During the Pendency of this Action is Appropriate.**

To preserve the status quo, Louis Vuitton seeks an order temporarily modifying control of and prohibiting Defendants from transferring the Subject Domain Names to other parties. Under the operating rules of domain name registrars, defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name and thereby frustrate the court's ability to provide relief to the plaintiff. (See Gigante Decl. ¶ 4.) Moreover, Defendants can modify website content to thwart discovery and redirect traffic to thwart effective injunctive relief. (Id. at ¶¶ 4–6.) Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant such relief.[4] Here, an interim order prohibiting Defendants from transferring the Subject Domain Names poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Louis Vuitton full relief.

**3.**     **Entry of an Order Modifying Control, Redirecting, and Disabling the Subject Domain Names is Appropriate.**

An interim order redirecting, transferring, disabling, or canceling the offending domain names is the only means of affording a plaintiff interim relief that avoids irreparable harm. Accordingly, in order to disable and/or redirect the Subject Domain Names, Louis Vuitton

---

(same).  Accord Gucci America, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 19-60600-CIV-ALTONAGA, 2019 U.S. Dist. LEXIS 78861 (S.D. Fla. March 8, 2019) (same); Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A", Case No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019, docketed Feb. 20, 2019) (same); adidas AG v. 1jerseys.com, Case No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019) (same).

[4] See, e.g., Louis Vuitton Malletier v. aaalvsale.com, Case No. 21-cv-60790-BB (S.D. Fla. April 14, 2021) (prohibiting Defendants from transferring domain names during pendency or until further Order of the Court); Richemont International SA v. montblanchot.com, Case No. 20-cv-61941-BB (S.D. Fla. Sept. 25, 2020) (same); Apple Corps Limited, et al. v. lockalita.com, Case No. 20-cv-61916-BB (S.D. Fla. Sept. 23, 2020) (same); Chanel, Inc. v. 7areplica.ru, Case No. 19-cv-61532-BB (S.D. Fla. June 24, 2019). Accord  adidas AG v. 1jerseys.com, Case No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, Case No. 17-cv-62401-MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same).

requests the Court enter an order requiring the registrars and the registries which maintain the Top Level Domain ("TLD") Zone files for the Subject Domain Names change the registrar of record for the Subject Domain Names to a holding account with a Registrar of Louis Vuitton's choosing where they will be held in trust for the Court during the pendency of this action and set to automatically redirect to Louis Vuitton's publication website appearing at the URL http://servingnotice.com/Ls39fx1/index.html.[5]  Upon such redirection, a copy of all of the pleadings, other documents and Court orders issued in this matter will be immediately visible to Defendants the moment they type any of their own domain names into their web browsers.  The Subject Domain Names would remain in Defendants' legal ownership, but they would no longer be able to display infringing and counterfeit website content at issue in this matter.  Rather, this would serve as an effective means of notifying Defendants of the pendency of this action, the relief sought by Louis Vuitton, and affording them and any other interested parties with an opportunity to object.

Thus, such relief is necessary to prevent the public from continuing to be defrauded by Defendants' illegal activities and avoids continuing irreparable harm to Louis Vuitton.

**D.    A Bond Should Secure the Injunctive Relief.**

Because of the strong and unequivocal nature of Louis Vuitton's evidence of counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement, Louis Vuitton respectfully requests this Court require it to post a bond of ten thousand dollars ($10,000.00) in Defendants' favor. The amount of posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

---

[5] Such relief regarding a change of registrars was granted by this Court in Louis Vuitton Malletier v. aaalvsale.com, Case No. 21-cv-60790-BB (S.D. Fla. April 14, 2021); Richemont International SA v. montblanchot.com, Case No. 20-cv-61941-BB (S.D. Fla. Sept. 25, 2020); Chanel, Inc. v. 7areplica.ru, Case No. 19-cv-61532-BB (S.D. Fla. June 24, 2019) (same); Chanel, Inc. v. Fendona, Case No. 19-cv-60734-BB (S.D. Fla. Mar. 25, 2019) (same); adidas AG v. 2017yeezy.com, Case No. 18-cv-62636-BB (Nov. 5, 2018) (same); and by other Courts in this District in adidas AG v. 1jerseys.com, Case No. 18-63164-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 43046 (S.D. Fla. Jan. 2, 2019); Cartier Int'l A.G. v. Replicapaneraiwatches.cn, Case No. 17-cv-62401-MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same).

IV.     **CONCLUSION**

In view of the foregoing, Louis Vuitton respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on Louis Vuitton's Motion for Entry of Preliminary Injunction before the expiration of the temporary restraining order.

DATED: February 4, 2022.                    Respectfully submitted,

                                            STEPHEN M. GAFFIGAN, P.A.

                                            By: **Virgilio Gigante**/_____
                                            Stephen M. Gaffigan (Fla. Bar No. 025844)
                                            Virgilio Gigante (Fla. Bar No. 082635)
                                            T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
                                            401 East Las Olas Blvd., #130-453
                                            Ft. Lauderdale, Florida 33301
                                            Telephone: (954) 767-4819
                                            E-mail: stephen@smgpa.net
                                            E-mail: leo@smgpa.net
                                            E-mail: raquel@smgpa.net

                                            Attorneys for Plaintiff Louis Vuitton Malletier

**SCHEDULE A**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | lvhut.net |
| 2 | louis-special-sale.shop |
| 3 | goslouisvuitton.com |
| 4 | louisved.xyz |
| 5 | louisvued.com |
| 6 | louisvuitton-my.site |
| 7 | lovelvbag.store |
| 8 | lvicon.online |
| 9 | lv-malaysia.store |
| 10 | lvoutlet.ca |
| 11 | lvreplicashop.com |
| 12 | lv-thegardens.com |
| 13 | malaysia-lv.com |
| 14 | malaysia-lvbag.store |
| 15 | my-lvbag.info |
| 16 | perfectlouisvuittonsale.com |
| 17 | replicalvonline.com |
| 18 | thegardens-lv-kl.com |
| 19 | toplvmall.com |
| 20 | aaaluxurybags.com |
| 21 | 66shop.ru |
| 22 | aaaclothing.ru |
| 23 | aaapurse.nu |
| 24 | aaareplica.co |
| 25 | aaraplica.com |
| 26 | abcbyiktuys.pw |
| 27 | acmaaslea.top |
| 28 | addnss.com |
| 29 | aimji.live |
| 30 | annjxauo.top |
| 31 | associateadapt.top |
| 32 | bagsreplica.de |
| 33 | baofse.top |
| 34 | bdkind.store |
| 35 | bdznednz.top |

| 36 | bestbag.shop |
|----|----|
| 37 | bestqualityreplica.ru |
| 38 | btsmud.top |
| 39 | buyebag.top |
| 40 | bvcnta.top |
| 41 | bxsyeao.top |
| 42 | cbhjskv.top |
| 43 | cdftbag.top |
| 44 | chinareplicbagas.com |
| 44 | dolabuy.ru |
| 44 | replicacloibag.com |
| 44 | thebagsreplicas.com |
| 45 | cmsbeb.top |
| 46 | cnaveua.top |
| 47 | cnvjgrks.top |
| 48 | copybagssale.com |
| 49 | copyforbags.com |
| 50 | corabags.ru |
| 51 | csffbg.top |
| 52 | daphnesale.ru |
| 53 | demakoaf.top |
| 54 | dfsdfgrg.shop |
| 55 | dropthenew.com |
| 56 | dvrcbht.top |
| 57 | e8bags.co |
| 58 | ehdgfsh.top |
| 59 | eyushi.top |
| 60 | ezzcc.com |
| 61 | fabag.ru |
| 62 | fakescu.com |
| 63 | famouside.com |
| 64 | fashionbags-sale.com |
| 65 | fashionhouse.buzz |
| 66 | fasionoto.ru |
| 67 | fauxbagsale.com |
| 68 | fcdshsu.top |
| 68 | mnchwa.top |
| 69 | fxtayhk.top |
| 70 | gdhnawo.top |
| 71 | handbagsreplicastore.com |

| 72 | hbndgyw.top |
|---|---|
| 73 | hellosneaker.ru |
| 74 | kindsneaker.net |
| 75 | kopi-6.com |
| 76 | krosshop24.ru |
| 77 | lianwholesale.com |
| 78 | lilysale.ru |
| 78 | lilysite.ru |
| 79 | luxcrime.ru |
| 79 | lux-crime.ru |
| 80 | luxebagseu.com |
| 81 | luxesborse.com |
| 82 | luxruy.com |
| 83 | luxury2018.com |
| 84 | luxurybagaa.com |
| 85 | luxurybagoutlet.com |
| 86 | luxurymybag.com |
| 87 | luxuryshoesu.de |
| 88 | luxurysuu.com |
| 89 | luxurytasticreps.ru |
| 90 | luxusdiva.com |
| 91 | mandybrands-03.com |
| 92 | mcdeue.top |
| 93 | mchaui.top |
| 94 | mckswh.top |
| 95 | mdjitcx.top |
| 96 | methodc.com |
| 97 | mfjernc.top |
| 98 | mfvjrsew.top |
| 99 | mgifkdls.top |
| 100 | mgsaywa.top |
| 101 | mhsebag.top |
| 102 | mhycbag.top |
| 103 | mnxhua.top |
| 104 | mnxwok.top |
| 105 | modecina.cn |
| 105 | modecina.ru |
| 106 | mxnbzw.top |
| 107 | mxsajkw.top |
| 108 | mzbhwu.top |

| 109 | nbvrtyf.top |
| 110 | ncaxzjbn.top |
| 111 | nceubag.top |
| 112 | ncmfjrs.top |
| 113 | ncrsfsd.top |
| 114 | ncyesizs.top |
| 115 | ndsyve.top |
| 116 | neverfulloutlet.com |
| 117 | newbuybuystations.com |
| 118 | ngfsfsfd.top |
| 119 | nmjhac.top |
| 120 | nvxdedx.top |
| 121 | nyseti.top |
| 122 | originalhandbag.top |
| 123 | outletborsa.net |
| 124 | perfectfakebags.com |
| 125 | pkajstore.com |
| 126 | pkshoe.com |
| 126 | pkshoe.net |
| 127 | popbrandcenter.com |
| 128 | pursevalleyfactory.la |
| 129 | qdfdny.top |
| 130 | qdncz.top |
| 131 | qualitybestbags.com |
| 132 | realfashion24.com |
| 133 | replica-watches-germany.com |
| 134 | replicawatchespro.co |
| 135 | replicaxi.com |
| 136 | resinstatue.club |
| 137 | sdehbag.top |
| 138 | sffp.shop |
| 139 | sneakerinbox.com |
| 140 | taikcmj.top |
| 141 | tangerjapanoutlet.com |
| 142 | thcodway.com |
| 143 | theybag.top |
| 144 | tikhub.ru |
| 145 | toplifeshop.com |
| 146 | towbag.shop |
| 147 | udifskb.top |

| | |
|---|---|
| 148 | uenmbag.top |
| 149 | uhdsahwo.top |
| 150 | ujhyfsdt.top |
| 151 | vipsluxurybags.com |
| 152 | vlixcolux.com |
| 153 | vmnxjews.top |
| 154 | wdvbf.top |
| 155 | wfvnbag.top |
| 156 | xcfwnm.top |
| 157 | xndjosen.top |
| 158 | xnhyao.top |
| 159 | xnwyid.top |
| 160 | yangyuejianqiali.com |
| 161 | yfkew.com |
| 162 | yreplicabags.com |
| 163 | ytgfdlcm.top |
| 164 | ytrfegh.top |