## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 22-cv-60228-BLOOM/Valle

LOUIS VUITTON MALLETIER,

        Plaintiff,

v.

LVHUT.NET, *et al.*,

        Defendants.

_____/

### ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Louis Vuitton Malletier's ("Plaintiff")
Motion for Entry of Final Default Judgment Against Defendants, ECF No. [29] ("Motion"), filed
on April 3, 2022. A Clerk's Default was entered against Defendants on March 18, 2022, ECF No.
[27], as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1],
despite having been served. *See* ECF No. [17]. The Court has carefully considered the Motion, the
record in this case, the applicable law, and is otherwise fully advised. For the following reasons,
Plaintiff's Motion, **ECF No. [29]**, is **GRANTED**.

### I.    INTRODUCTION

Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the
Lanham Act, 15 U.S.C. § 1114; false designation of origin under § 43(a) of the Lanham Act,
15 U.S.C. § 1125(a); cybersquatting under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(d);
common-law unfair competition; and common-law trademark infringement. The Complaint
alleges that Defendants are promoting, advertising, distributing, offering for sale and selling goods
bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's registered

trademarks within the Southern District of Florida through the fully interactive commercial Internet websites and supporting domains operating under their domain names identified on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment (the "Subject Domain Names"). *See* ECF No. [29] at 21–25.

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded the public into thinking Defendants' goods are goods authorized by Plaintiff; (3) deceived the public as to Plaintiff's association with Defendants' goods and the websites that market and sell the goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill, as well as the commercial value of Plaintiff's trademarks.

In its Motion, Plaintiff seeks the entry of default final judgment against Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, cybersquatting, common-law unfair competition, and common-law trademark infringement. Plaintiff further requests that the Court (1) enjoin Defendants from producing or selling goods that infringe its trademarks; (2) cancel, or at Plaintiff's election, transfer the Subject Domain Names to Plaintiff; (3) assign all rights, title, and interest to the Subject Domain Names to Plaintiff and permanently delist or deindex the domain names from any Internet search engines; (4) permanently cease all services to Defendants in connection with the domain names at issue; (5) permanently close the domain registration accounts in which the domain names at issue are located, and (6) award statutory damages.

---

[1] Defendants are the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order. *See* ECF No. [29] at 21–25.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Granting a motion for default judgment is within the trial court's discretion. *Nishimatsu*, 515 F.2d at 1206. Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered. *See id.*; *see also Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default. . ."). Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleading for the default judgment to be entered in favor of Plaintiff.

## II.    FACTUAL BACKGROUND[2]

Plaintiff Louis Vuitton Malletier is the owner of the entire right, title and interest in and to the Louis Vuitton trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Louis Vuitton Marks"):

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
|  | 0,297,594 | September 20, 1932 | IC 18. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks. |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 | IC 18. Luggage and ladies' handbags. |

---

[2] The factual background is taken from Plaintiff's Complaint, ECF No. [1], Plaintiff's Motion for Entry of Final Default Judgment Against Defendants, ECF No. [29], and supporting evidentiary submissions.

| | 1,519,828 | January 10, 1989 | IC 18. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, pocketbooks. |
|---|---|---|---|
| | 1,770,131 | May 11, 1993 | IC 25. Clothing for men and women, namely, shawls, sashes, scarves; headgear. |
| | 1,794,905 | September 28, 1993 | IC 16. Stationery, pads of stationery, calendars, indexes for articles made for travellers, notebooks, envelopes; writing paper, office requisites in the nature of writing pads, pencil holders, pen cases, pencil cases, nibs, nibs of gold, inkwells, inkstands.<br>IC 25. Clothing for men and women; namely belts, shawls, sashes, scarves; footwear headgear. |
| | 1,938,808 | November 28, 1995 | IC 14. Jewelry, watches and straps for wrist watches.<br>IC 24. Travel blankets made of textile. |
| LOUIS VUITTON | 1,990,760 | August 6, 1996 | IC 14. Watches and straps for wrist watches.<br>IC 16. Catalogues featuring luggage and travel accessories, bags, small leather goods, and garments; notebooks, anthologies, and pamphlets referring to travel; calendars; telephone indexes; fountain pens, ballpoint pens, nibs, covers for pocket and desk diaries, and checkbook holders.<br>IC 18. Trunks; traveling trunks; suitcases; traveling bags; luggage; garment bags for travel; hat boxes for travel; shoe bags for travel; umbrellas; animal carriers; rucksacks; haversacks; leather or textile shopping bags; beach bags; handbags; vanity cases sold empty; attaché cases; tote bags, travel satchels; clutch bags; briefcases; wallets; pocket wallets; credit card cases; business card cases; bill and card holders; checkbook holders; key cases; change purses; briefcase-type portfolios.<br>IC 24. Travel blankets<br>IC 25. Shirts; sweatshirts; polo shirts; T-shirts; headwear; jackets; ties; belts; shawls; scarves. |

| | | | |
|---|---|---|---|
|  | 2,177,828 | August 4, 1998 | IC 14. Goods made of precious metals, namely, shoe ornaments, ornamental pins; jewelry, namely, rings, ear rings, cufflinks, bracelets, charms, necklaces; horological instruments, straps for watches, watches and wrist-watches, and cases for watches. IC 18. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, and credit card cases, umbrellas. IC 25. Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |
|  | 2,181,753 | August 18, 1998 | IC 14. Jewelry, namely, rings, ear rings, bracelets, charms, necklaces, horological instruments, straps for watches, watches, and wrist-watches, and cases for watches. IC 18. Goods made of leather or imitations of leather are not included in other classes, namely, boxes made from leather; trunks, valises, traveling bags, luggage for travel, garment bags for travel, vanity cases sold empty, rucksacks, hand bags, beach bags, shopping bags, shoulder bags, attaché cases, briefcases, and fine leather goods, namely, pocket wallets, purses, leather key holders, business card cases, calling card cases, credit card cases, and umbrellas. IC 25. Clothing and underwear, namely, shirts, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, belts, shoes, boots, and sandals. |
|  | 2,361,695 | June 27, 2000 | IC 25. Clothing, namely, sweaters, shirts, sweatshirts, polo shirts, t-shirts, suits, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, pocket handkerchief squares for wear, gloves, ties, belts, bathing suits, shoes, boots and sandals, and hats. |

| | | | |
|---|---|---|---|
| LOUIS VUITTON PARIS | 2,378,388 | August 22, 2000 | IC 18. Goods made of leather or imitations of leather not included in other classes, namely, boxes of leather principally used for travel purposes, trunks, valises, traveling bags, * traveling sets for containing cosmetics and jewelry, * handbags, beach bags, shopping bags, shoulder bags, brief cases, pouches, fine leather goods namely, pocket wallets, purses, key cases, business card cases, credit card cases. |
| | 2,399,161 | October 31, 2000 | IC 25. Clothing and underwear, namely, shirts, polo shirts, t-shirts, waistcoats, raincoats, skirts, coats, trousers, dresses, jackets, shawls, stoles, scarves, neckties, gloves, ties, belts, bathing suits, shoes, boots and sandals, hats. |
| | 2,773,107 | October 14, 2003 | IC 14. Jewelry including rings, earrings, cuff links, bracelets, charms, necklaces, and medallions; horological and chronometric instruments and apparatus, namely, watches, <br> IC 18. Travel bags, travel bags made of leather; luggage trunks and valises, garment bags for travel, vanity-cases sold empty; rucksacks, shoulder bags, handbags; attaché cases, briefcases, drawstring pouches, pocket wallets, purses, umbrellas, business card cases made of leather or of imitation leather, credit card cases made of leather or of imitation leather; key holders made of leather or of imitation leather. <br> IC 25. Clothing, namely, shirts, T-shirts, belts, scarves, neck ties, shawls, skirts, raincoats, overcoats, trousers, jeans, pullovers, frocks, highheeled shoes, low-heeled shoes, boots, tennis shoes; hats |
| LOUIS VUITTON | 2,904,197 | November 23, 2004 | IC 14: jewelry, namely, rings, earrings, cuff links, bracelets, charms, necklaces, (( tie pins, and medallions; keyrings made of precious metal; )) horological and chronometric instruments, namely, watches, wrist-watches, (( clocks, )) (( alarm clocks; )) straps for wrist-watches and watch cases. |
| LOUIS VUITTON | 2,909,003 | December 7, 2004 | IC 009. Optical instruments and apparatus, namely, spectacles, eyeglasses, spectacle cases. <br> IC 024. Textiles and textile goods, namely, household linen including bed [ and bath ] linen [, handkerchiefs of textile ]. |

Case No. 22-cv-60228-BLOOM/Valle

| | | | |
|---|---|---|---|
| ⊞ ✖ ⊞<br>✖ ☺ ✖<br>⊞ ✖ ⊞ | 3,107,072 | June 20, 2006 | IC 09. Spectacles, sunglasses and spectacle cases.<br>IC 14. Jewelry, namely, rings, earrings and ear clips, cuff links, bracelets, charms, necklaces, tie pins, medallions; horological and chronometric apparatus and instruments, namely, watches, watch cases, alarm clocks; jewelry boxes of precious metal, their alloys or coated therewith.<br>IC 18. Leather and imitation leather products, namely, traveling bags, traveling sets comprised of bags or luggage, trunks and suitcases, garment bags for travel purposes; vanity cases sold empty, rucksacks, shoulder bags, handbags, attaché cases, document wallets and briefcases made of leather, pouches made of leather, wallets, purses, key cases, business card cases, credit card cases; umbrellas.<br>IC 25. Clothing and undergarments, namely, shirts, tee-shirts, belts, scarves, neckties, shawls, skirts, raincoats, overcoats, trousers, denim trousers, dresses, jackets, sashes for wear, bathing suits, shoes, boots. |
|  | 3,576,404 | February 17, 2009 | IC 18: boxes of leather or imitation leather for packaging and carrying goods, trunks, suitcases, traveling sets comprised of matching luggage, traveling bags, luggage, garment bags for travel, ((vanity cases not fitted, )) toiletry cases sold empty, rucksacks, satchels, handbags, beach bags, leather shopping bags, sling bags, suit carriers, shoulder bags, waist bags, purses, travel cases, briefcases, briefcase-type portfolios, leather pouches, wallets, change purses, key cases, business card cases, calling card cases. |

| | | | |
|---|---|---|---|
|  | 4,192,541 | August 21, 2012 | IC 03. Soaps for personal use; perfumery; essential oils; cosmetics; creams for the hair, face, and body; lotions for the hair, face, and body; shower and bath gels; shower and bath preparations; shampoos; make-up preparations, namely, foundations, lipsticks, eye shadows, mascara, make-up powder, and nail polish. IC 09. Sunglasses; spectacles; optical lenses; spectacle cases; telephones; mobile telephones; smart phones; PC tablets; personal digital assistants; MP3 players; accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, hands-free kits for telephones, batteries, covers, housings, façades, chargers, hand straps, and neck straps. IC 14. Jewelry; key rings of precious metal; tie pins; medallions; jewelry boxes; watches; watch bands; alarm clocks; cases for timepieces. IC 16. Printed matter, namely, pamphlets, catalogs, and books in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; publications, namely, brochures and booklets in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; stationery; stationery articles, namely, note pads, writing books, drawing books, calendars, agendas, notebooks, envelopes, letter paper, and index cards; covers for diaries, indexes, and pads; office requisites, namely, letter trays, paper cutters, pencils, inkstands, inkwells, paperweights, pencil holders, pen holders, writing pads, pens, balls, and nibs for pens; postcards; paper labels; newspapers; printed documents, namely, printed certificates. IC 18. Boxes of leather or imitation leather for packaging and carrying goods; traveling bags; leather traveling sets of luggage; trunks; suitcases; garment bags for travel; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases; umbrellas. IC 24. Textiles and textile goods, namely, bath linen, bed linen, table linen, towels, bed covers, textile table cloths. IC 25. Clothing, namely, underwear, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear; headwear. IC 34. Cigar and cigarette cases of leather and imitation leather. |

| LOUIS VUITTON | 4,530,921 | May 13, 2014 | IC 09. Optical apparatus, namely, binoculars; blank USB sticks; spectacles; sunglasses; spectacle frames; spectacle glasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 Players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories. IC 16. Paper bags; boxes of cardboard or paper; cardboard and paperboard envelopes and pouches for packaging; plastic materials for packaging, namely, bags; posters; pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; paper labels; trading cards; greeting cards; business cards; invitation cards; printed publications, namely, books, newspapers, leaflets, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; bookbinding materials; printed photographs; photograph albums; stationery, namely, note pads, desk pads, writing pads, drawing pads, envelopes, note paper; calendars; pocket calendars; note books; telephone indexes; diary covers; diaries; office requisites, namely, letter trays, paper knives, ink stands, inkwells, paper weights, pencil holders, pen holders, pencil tubs, blotting pads, pencils, fountain pens, rubber erasers, pen cases; printing types; printing blocks; table linens of paper. IC 25. Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, waterproof pants, overcoats, parkas, skirts, dresses, pajamas, dressing gowns, nightgowns, robe, gloves, neck ties, belts for clothing, leather belts, scarves, pocket squares, sashes for wear, shawls, stockings, socks, tights, braces for clothing, suspenders, stoles, underwear, lingerie, bathing suits; headwear; shoes; slippers; boots; half-boots. IC 26. Buttons; hooks and eyes; shoe buckles; hair accessories, namely, hair pins, barrettes, hair bows, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |
| --- | --- | --- | --- |

Case No. 22-cv-60228-BLOOM/Valle

| | | | |
|---|---|---|---|
| **LV** | 4,614,736 | September 30, 2014 | IC 09. Optical apparatus, namely, binoculars; blank USB sticks; spectacles; sunglasses; spectacle frames; spectacle glasses; spectacle cases; accessories for telephones, mobile phones, smart phones, tablet devices, PDAs, and MP3 players, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories. IC 16. Paper bags, boxes of cardboard or paper, cardboard and paperboard envelopes and pouches for packaging; plastic materials for packaging, namely, bags; posters; pamphlets referring to travel; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; paper labels; trading cards; greeting cards; business cards; invitation cards; printed publications, namely, books, newspapers, leaflets, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; bookbinding materials; printed photographs; photograph albums; stationery, namely, note pads, desk pads, writing pads, drawing pads, envelopes, note paper; calendars; pocket calendars; note books; telephone indexes; diary covers; diaries; office requisites, namely, letter trays, paper knives, ink stands, inkwells, paper weights, pencil holders, pen holders, pencil tubs, blotting pads, pencils, fountain pens, rubber erasers, pen cases; printing types; printing blocks; table linens of paper. IC 26. Buttons; hooks and eyes; shoe buckles; hair accessories, namely, hair pins, barrettes, hair bows, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing; clothing fasteners, namely, scarf holders. |

*See* Declaration of Hadrien Huet, ECF No. [6-2] at ¶ 4; ECF No. [1-2] (containing Certificates of Registrations for the Louis Vuitton Marks at issue). The Louis Vuitton Marks are used in connection with the manufacture and distribution of high-quality luxury goods in the categories identified above. *See* Declaration of Hadrien Huet, ECF No. [6-2] at ¶¶ 4–5.

Defendants, through the various fully interactive, commercial Internet websites and supporting domains[3] operating under the Subject Domain Names, have advertised, promoted,

---

[3] Plaintiff asserts some Defendants use their Subject Domain Names to act as supporting domain names to direct traffic to their fully-interactive, commercial websites, including those operating

offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Louis Vuitton Marks. *See* Declaration of Hadrien Huet, ECF No. [6-2] at ¶¶ 9–11.

Although each Defendant may not copy and infringe each Louis Vuitton Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Louis Vuitton Marks. *See* Declaration of Hadrien Huet, ECF No. [6-2] at ¶¶ 10–11). Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Louis Vuitton Marks. *See* Declaration of Hadrien Huet, ECF No. [6-2] at ¶¶ 9-11.

Plaintiff's representative reviewed and visually inspected each Defendants' Websites, including images reflecting the various items bearing the Louis Vuitton Marks offered for sale by Defendants through the Internet websites operating under the Subject Domain Names, and/or websites to which those domain names either automatically or manually redirect, and determined the products were non-genuine, unauthorized versions of Plaintiff's products. *See* Declaration of Hadrien Huet, ECF No. [6-2] at ¶¶ 10–11.

### III.   ANALYSIS

#### A.  Claims

##### 1.   *Trademark Counterfeiting and Infringement Under 15 U.S.C. § 1114 (Count I)*

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause

---

under other Subject Domain Names, from which consumers can complete purchases. *See* Declaration of Virgilio Gigante [6-3] at ¶ 2, n.1

confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114. In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2.   *False Designation of Origin Under 15 U.S.C. § 1125(a) (Count II)*

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. *See* 15 U.S.C. § 1125(a)(1). The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780 (1992).

### 3.   *Cybersquatting Under 15 U.S.C. § 1125(d) (Count III)*

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name that is identical or confusingly similar to, or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. § 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or

confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

### 4. Common-Law Unfair Competition and Trademark Infringement (Counts IV and V)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester,* No. 83- 8381-CIV-PAINE, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)".); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975) ("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004).

### B.  Liability

The well-pled factual allegations of Plaintiff's Complaint properly allege the elements for each of the claims described above. *See* ECF No. [1]. Moreover, the factual allegations in Plaintiff's Complaint has been substantiated by sworn declarations and other evidence and establish Defendants' liability under each of the claims asserted in the Complaint. Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.  Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express,* 336 F. Supp. 2d at 1222–23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's  lack  of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.")

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006). Plaintiff has carried its burden on each of the four factors. Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale

of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. *See* ECF No. [1]. Further, the Complaint alleges, and the submissions by Plaintiff show, that the goods promoted, advertised, offered for sale, and sold by Defendants are nearly identical to Plaintiff's genuine products and that consumers viewing Defendants' counterfeit goods post-sale would actually confuse them for Plaintiff's genuine products. *See id*. "Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods are genuine goods originating from, associated with, and/or approved by [Plaintiff]." *See* ECF No. [1] at 27.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiff cannot control the quality of what appears to be its products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971) ("Once

a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co*., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. *See* 15 U.S.C. § 1125(d)(1)(C), (d)(2). However, courts have not limited the remedy to that context. *See, e.g., Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)).

Defendants have created an Internet-based counterfeiting scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities by canceling or transferring the Subject Domain Names and assigning all rights, title, and interest to the Subject Domain Names to Plaintiff, disabling, de-indexing or delisting the Subject Domain Names from any Internet search engine, permanently ceasing all services to Defendants in connection with the Subject Domain Names, including permanently

deleting the Subject Domain Names from its DNS used for the DoH (1.1.1.1), and permanently

closing the domain registration accounts in which the Subject Domain Names are located, where

they may be disabled from further use as platforms for the sale of counterfeit goods. *See* ECF No.

[29] at 12–13.

### D.  Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale,

or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of

statutory damages at any time before final judgment is rendered in the sum of not less than $1,000

nor more than $200,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1). In addition,

if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages

above the maximum limit up to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2).

Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as

to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed*

*Express,* 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902

F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a plaintiff's

inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v.*

*51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (quoting

*Ford Motor Co.*, 441 F. Supp. 2d at 852 ("[A] successful plaintiff in a trademark infringement case

is entitled to recover enhanced statutory damages even where its actual damages are nominal or

non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998

WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to

prove actual damages or profits). Indeed, Congress enacted a statutory damages remedy in

trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost

impossible to ascertain. *See* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express,* 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment regarding damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendants intentionally copied Plaintiff's Marks for the purpose of deriving the benefit of Plaintiff's famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000 per infringing mark on each type of good as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one (1) type of good bearing and/or using one (1) mark which were in fact counterfeits of at least one of Plaintiff's Marks. *See* ECF No. [29]. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $1,000,000

per mark, per type of good. As each Defendant used at least one counterfeit mark on one type of good, Plaintiff suggests the Court award statutory damages of $1,000,000 against each Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.   Damages for False Designation of Origin

Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II). *See* 15 U.S.C. § 1125(a). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F.   Statutory Damages for Cybersquatting

Plaintiff's Complaint also sets forth a cause of action for cybersquatting pursuant to the ACPA, 15 U.S.C. §1125(d). As admitted by default, and established by the evidence submitted, Defendant Numbers 1–19 have acted with the bad-faith intent to profit from at least one of the Louis Vuitton Marks and the goodwill associated with the Louis Vuitton Marks by registering their respective Subject Domain Names identified on Schedule "C" attached to Plaintiff's Motion (the "Cybersquatted Subject Domain Names"). *See* ECF No. [29] at 26. Each of the Cybersquatted Subject Domain Names incorporates one or more of the Louis Vuitton Marks in its entirety, surrounded by descriptive or generic terms, rendering the domain names nearly identical to the Louis Vuitton Marks.

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."

15 U.S.C. § 1125(d)(1)(c); *Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001). Accordingly, Plaintiff is entitled to the transfer and ownership of Defendant Numbers 1–19's Cybersquatted Subject Domain Names because they are confusingly similar to at least one of the Louis Vuitton Marks.

Additionally, Plaintiff may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000 and not more than $100,000 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiff has elected statutory damages and request, in view of Defendant Numbers 1–19's intentional, wrongful behavior, an award in the amount of $10,000 for each of the Cybersquatted Subject Domain Names. *See* ECF No. [29] at 26. *See Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000 in statutory damages for the infringing domain name at issue). The Court finds that this amount is reasonable and, therefore, awards such damages.

### G.  Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count IV) and trademark infringement (Count V). Judgment on Count IV and Count V are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [29]**, is **GRANTED** against those Defendants listed in the attached Schedule "A." Final Default Judgment will be entered by separate order.

Case No. 22-cv-60228-BLOOM/Valle

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 5, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Case No. 22-cv-60228-BLOOM/Valle

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Defendant Number | Defendant / Subject Domain Dame |
|---|---|
| 1 | lvhut.net |
| 2 | louis-special-sale.shop |
| 3 | goslouisvuitton.com |
| 4 | louisved.xyz |
| 5 | louisvued.com |
| 6 | louisvuitton-my.site |
| 7 | lovelvbag.store |
| 8 | lvicon.online |
| 9 | lv-malaysia.store |
| 10 | lvoutlet.ca |
| 11 | lvreplicashop.com |
| 12 | lv-thegardens.com |
| 13 | malaysia-lv.com |
| 14 | malaysia-lvbag.store |
| 15 | my-lvbag.info |
| 16 | perfectlouisvuittonsale.com |
| 17 | replicalvonline.com |
| 18 | thegardens-lv-kl.com |
| 19 | toplvmall.com |
| 20 | aaaluxurybags.com |
| 21 | 66shop.ru |
| 22 | aaaclothing.ru |
| 23 | aaapurse.nu |
| 24 | aaareplica.co |
| 25 | aararplica.com |
| 26 | abcbyiktuys.pw |
| 27 | acmaaslea.top |
| 28 | addnss.com |
| 29 | aimji.live |
| 30 | annjxauo.top |
| 31 | associateadapt.top |
| 32 | bagsreplica.de |
| 33 | baofse.top |
| 34 | bdkind.store |
| 35 | bdznednz.top |

| 36 | bestbag.shop |
|----|---|
| 37 | bestqualityreplica.ru |
| 38 | btsmud.top |
| 39 | buyebag.top |
| 40 | bvcnta.top |
| 41 | bxsyeao.top |
| 42 | cbhjskv.top |
| 43 | cdftbag.top |
| 44 | chinareplicbagas.com |
| 44 | dolabuy.ru |
| 44 | replicacloibag.com |
| 44 | thebagsreplicas.com |
| 45 | cmsbeb.top |
| 46 | cnaveua.top |
| 47 | cnvjgrks.top |
| 48 | copybagssale.com |
| 49 | copyforbags.com |
| 50 | corabags.ru |
| 51 | csffbg.top |
| 52 | daphnesale.ru |
| 53 | demakoaf.top |
| 54 | dfsdfgrg.shop |
| 55 | dropthenew.com |
| 56 | dvrcbht.top |
| 57 | e8bags.co |
| 58 | ehdgfsh.top |
| 59 | eyushi.top |
| 60 | ezzcc.com |
| 61 | fabag.ru |
| 62 | fakescu.com |
| 63 | famouside.com |
| 64 | fashionbags-sale.com |
| 65 | fashionhouse.buzz |
| 66 | fasionoto.ru |
| 67 | fauxbagsale.com |
| 68 | fcdshsu.top |
| 68 | mnchwa.top |
| 69 | fxtayhk.top |
| 70 | gdhnawo.top |
| 71 | handbagsreplicastore.com |

| 72 | hbndgyw.top |
|---|---|
| 73 | hellosneaker.ru |
| 74 | kindsneaker.net |
| 75 | kopi-6.com |
| 76 | krosshop24.ru |
| 77 | lianwholesale.com |
| 78 | lilysale.ru |
| 78 | lilysite.ru |
| 79 | luxcrime.ru |
| 79 | lux-crime.ru |
| 80 | luxebagseu.com |
| 81 | luxesborse.com |
| 82 | luxruy.com |
| 83 | luxury2018.com |
| 84 | luxurybagaa.com |
| 85 | luxurybagoutlet.com |
| 86 | luxurymybag.com |
| 87 | luxuryshoesu.de |
| 88 | luxurysuu.com |
| 89 | luxurytasticreps.ru |
| 90 | luxusdiva.com |
| 91 | mandybrands-03.com |
| 92 | mcdeue.top |
| 93 | mchaui.top |
| 94 | mckswh.top |
| 95 | mdjitcx.top |
| 96 | methodc.com |
| 97 | mfjernc.top |
| 98 | mfvjrsew.top |
| 99 | mgifkdls.top |
| 100 | mgsaywa.top |
| 101 | mhsebag.top |
| 102 | mhycbag.top |
| 103 | mnxhua.top |
| 104 | mnxwok.top |
| 105 | modecina.cn |
| 105 | modecina.ru |
| 106 | mxnbzw.top |
| 107 | mxsajkw.top |
| 108 | mzbhwu.top |

Case No. 22-cv-60228-BLOOM/Valle

| 109 | nbvrtyf.top |
|-----|-------------|
| 110 | ncaxzjbn.top |
| 111 | nceubag.top |
| 112 | ncmfjrs.top |
| 113 | ncrsfsd.top |
| 114 | ncyesizs.top |
| 115 | ndsyve.top |
| 116 | neverfulloutlet.com |
| 117 | newbuybuystations.com |
| 118 | ngfsfsfd.top |
| 119 | nmjhac.top |
| 120 | nvxdedx.top |
| 121 | nyseti.top |
| 122 | originalhandbag.top |
| 123 | outletborsa.net |
| 124 | perfectfakebags.com |
| 125 | pkajstore.com |
| 126 | pkshoe.com |
| 126 | pkshoe.net |
| 127 | popbrandcenter.com |
| 128 | pursevalleyfactory.la |
| 129 | qdfdny.top |
| 130 | qdncz.top |
| 131 | qualitybestbags.com |
| 132 | realfashion24.com |
| 133 | replica-watches-germany.com |
| 134 | replicawatchespro.co |
| 135 | replicaxi.com |
| 136 | resinstatue.club |
| 137 | sdehbag.top |
| 138 | sffp.shop |
| 139 | sneakerinbox.com |
| 140 | taikcmj.top |
| 141 | tangerjapanoutlet.com |
| 142 | thcodway.com |
| 143 | theybag.top |
| 144 | tikhub.ru |
| 145 | toplifeshop.com |
| 146 | towbag.shop |
| 147 | udifskb.top |

Case No. 22-cv-60228-BLOOM/Valle

| | |
|---|---|
| 148 | uenmbag.top |
| 149 | uhdsahwo.top |
| 150 | ujhyfsdt.top |
| 151 | vipsluxurybags.com |
| 152 | vlixcolux.com |
| 153 | vmnxjews.top |
| 154 | wdvbf.top |
| 155 | wfvnbag.top |
| 156 | xcfwnm.top |
| 157 | xndjosen.top |
| 158 | xnhyao.top |
| 159 | xnwyid.top |
| 160 | yangyuejianqiali.com |
| 161 | yfkew.com |
| 162 | yreplicabags.com |
| 163 | ytgfdlcm.top |
| 164 | ytrfegh.top |